728 A.2d 698

**John William ROBINSON**

v.

**STATE of Maryland.**

**No. 74, Sept. Term, 1998.**

Court of Appeals of Maryland.

April 28, 1999.

Arthur A. DeLano, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Rachel M. Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RAKER, Judge.

Petitioner was convicted in the Circuit Court for Prince George's County on June 3, 1997 of assault and battery. We granted certiorari to answer the question whether "common law assault and battery was a cognizable crime in Maryland

after October 1, 1996," the effective date of statutory assault, 1996 Laws of Maryland, Ch. 632. We shall hold that by this statutory enactment the General Assembly repealed the common law crimes of assault and battery.

## I.

Petitioner, John W. Robinson, was charged by the Grand Jury for Prince George's County in a five count indictment with the offenses of child abuse, Count One, in violation of Maryland Code (1957, 1996 Repl.Vol., 1998 Supp.) Article 27, § 35C;[1] third degree sexual offense, Count Two, in violation of § 464B; fourth degree sexual offense, Count Three, in violation of § 464C; second degree assault, Count Four, in violation of § 12A; and assault and battery, Count Five, in violation of the Common Law. In the charging document, the State alleged that on or about September 7, 1996 through October 30, 1996, Petitioner committed a sexual offense upon C.W., a seven year old female, and an assault and battery upon her. Petitioner was a good friend of C.W.'s father. The two men routinely watched football games together every Sunday afternoon during autumn at C.W.'s home.

C.W. testified that sometime before her birthday[2] during the fall of 1996, she had been watching football on a Sunday afternoon with her father and Petitioner when Petitioner "picked me up and carried me to my mother's room and touched my private" by rubbing her on the outside of her clothing. The State attempted to establish with certainty the date of the offense. C.W. could only remember that the incident occurred on a Sunday, before her birthday, while she was watching football. At a bench conference, the State elaborated on the date of the incident:

---

1. Unless otherwise specified, all subsequent statutory references shall be to Maryland Code (1957, 1996 Repl.Vol., 1998 Supp.) Article 27.

2. While there appeared to be some confusion from her father's testimony as to the year of C.W.'s birth, a perusal of the entire record makes clear that her date of birth is October 30, 1989.

What we know is according to the indictment, the incident occurred sometime between September 7th of 1996 and October 30th of 1996. But C. can say it certainly happened before her birthday on the 30th of October, and it didn't come out during the testimony, but she has said to me in the past that it came after school. That is why the September 7th date . . . and what we do know is that at some point, she told Anthony[3] that it had occurred.

At the conclusion of the State's case, Petitioner moved for judgment of acquittal on all counts. His counsel argued the following:

[DEFENSE COUNSEL]: Your Honor, as to Counts 4 and 5 of the indictment, which charges Mr. Robinson with second degree assault, and Count 5, common law assault.

THE COURT: Which is Count 5.

[DEFENSE COUNSEL]: I respectfully submit that considering the fact that—

THE COURT: They're one in the same.

[DEFENSE COUNSEL]: They are duplicitous.[4]

---

**3.** Anthony was a schoolmate of C.W.'s who testified at trial that sometime after school started in 1996 but before C.W.'s birthday on October 30th, C.W. told him "about something that happened to her" which he then related to his own mother. Anthony's mother then testified that she related the incident to C.W.'s mother. None of this testimony, however, expressly identified Petitioner. Only later did C.W. herself testify that she had related the incident to Anthony, warning him, "Don't go to sleep around [Petitioner], or he'll touch you in your private."

**4.** The indictment in this case was not duplicitous. "Duplicity is the charging of separate offenses in a single count." 2 W.R. LaFave & J.H. Israel, Criminal Procedure § 19.2(e), at 457 (1984). "The general rule of the common law is that an indictment should not charge the commission of two or more substantive offenses in the same count, and in the event that it does so it is objectionable because of duplicity." *Jackson v. State,* 176 Md. 399, 401, 5 A.2d 282, 283 (1939) (citations omitted). *See also Kirsner v. State,* 183 Md. 1, 5, 36 A.2d 538, 540 (1944); *Weinstein v. State,* 146 Md. 80, 83, 125 A. 889, 890 (1924); *Mohler v. State,* 120 Md. 325, 327, 87 A. 671, 671 (1913); *State v. Warren,* 77 Md. 121, 122, 26 A. 500, 500 (1893); *Ayre v. State,* 21 Md.App. 61, 64, 318 A.2d 828, 831 (1974). The charges against Petitioner about which defense counsel complained here—statutory second degree assault and common law

THE COURT: I think we'll rectify that. [State's Attorney], does the State have a desire to not proceed as to Counts 4 and 5 at this point in time?

[STATE'S ATTORNEY]: The second degree assault? That's correct, Your Honor. At this time—Very well. The State would enter Count 4 as nolle prosequi.

THE COURT: We're just going forward as to assault and battery a common law offense?

[STATE'S ATTORNEY]: Yes.

THE COURT: Thank you. [Defense counsel], anything else?

[DEFENSE COUNSEL]: Well, having indicated that the State has nol-prossed Count 4, and being left with Count 5—

THE COURT: Do you care to address Counts 2 and 3?

[DEFENSE COUNSEL]: I'll get to that. I am concerned as to the allegations that the evidence has brought out that an alleged battery may have occurred, but we're still with-

---

assault and battery—were not duplicitous as that term is commonly understood in the law when applied to the charging of criminal offenses. These two offenses were charged in separate counts and were therefore not duplicitous.

"Multiplicity is the charging of the same offense in more than one count." *Brown v. State,* 311 Md. 426, 432 n. 5, 535 A.2d 485, 488 n. 5 (1988) (citing C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2D § 142 (1982, 1987 SUPP.)). *See also* LaFave & Israel, *supra,* § 19.2(e), at 457 ("A multiplicious indictment charges a single offense in several counts."). Arguably, if the State's contention that common law assault and battery was a cognizable crime after the enactment of statutory assault were correct, the indictment might be multiplicious. The defense's objection is thus more accurately characterized as multiplicity, *i.e.,* that the State charged Petitioner with commission of the same criminal act in more than one count in the indictment. To the extent Petitioner was seeking a judgment of acquittal, or dismissal of the indictment, based upon such multiplicity, the court was correct in not granting such a request. *See Brown,* 311 Md. at 432 n. 5, 535 A.2d at 488 n. 5 (stating that multiplicity is considered pleading defect not fatal to indictment or information (again, citing WRIGHT, *supra,* § 142) and noting that some courts have held objection to multiplicious indictment or information waived if not raised before trial). *See also* LaFave & Israel, *supra,* § 19.2(e), at 458 ("Multiplicity does not require dismissal of the indictment.").

out specificity as to what date it occurred. Now, granted the allegation in the indictment covers—correction, September 7th through October 30th, but without that specificity, I don't think that the Court can allow this count to go to the jury, because the nol-prossed Count 4, second degree assault, took effect October 1st. Common law assault was still the rule of law from September 7th through September 30th. Not knowing when the allegations occurred, I think that we can't allow the jury to speculate on that battery count.

THE COURT: Is it fair to say that you never raised the issue of specificity until now?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: Motion is denied as to Count 5. Okay. I'll hear you as to anything you want to say as to Counts 2 and 3.

[DEFENSE COUNSEL]: I was about to finish as far as not only specificity grounds, but as to sufficiency of the evidence as far as the date is concerned.

THE COURT: Thank you.

[DEFENSE COUNSEL]: ... [W]e would submit on Counts 2 and 3.

The trial court denied the motion for judgment of acquittal as to Counts one, two, three and five. The defense proceeded with its case, calling the defendant and Detective Michael Olds as witnesses. At the close of all of the evidence, the defense again moved for judgment of acquittal on all counts. After hearing argument from the State, the court asked defense counsel, "Do you want to address Counts 2 and 3 and 5 by indicating anything other than what you said already?" Defense counsel responded, "No, Your Honor. We'll submit." The trial judge granted Petitioner's motion for judgment of acquittal on Count one, child abuse, but denied the motion with respect to all remaining counts, thus leaving Counts two, three and five for the jury's consideration. The court instructed the jury that the time of the acts relative to all three counts

"concerned between the dates of September 7th, '96 and October 30th, 1996."

The jury returned a verdict of not guilty on the third degree sexual offense and the fourth degree sexual offense. The jury found Petitioner guilty of common law assault and battery. The court sentenced Petitioner to the Division of Correction for a period of ten years, with two years suspended, and five years probation upon his release from incarceration.

Robinson noted a timely appeal to the Court of Special Appeals. The intermediate court affirmed the judgment in an unreported opinion, holding "that common law assault and battery was and remains a cognizable crime in Maryland, except that from and after 1 October 1996 it is designated 'second degree assault' unless accompanied by certain aggravating factors elevating the offense to a felony now designated as 'first degree assault.'" We granted Robinson's petition for writ of certiorari to consider whether the Court of Special Appeals erred in holding that common law assault and battery was a cognizable crime in Maryland after October 1, 1996.

II.

In 1996, the Maryland General Assembly enacted Article 27, §§ 12, 12A and 12A–1, effective October 1, 1996. 1996 Laws of Maryland, Ch. 632. These statutes provide as follows:

§ 12. **Definitions.**

(a) *In general.*—In this subheading the following words have the meanings indicated.

(b) *Assault.*—Except as otherwise provided in this subheading, "assault" means the offenses of assault, battery, and assault and battery, which terms retain their judicially determined meanings.

(c) *Serious physical injury.*—"Serious physical injury" means physical injury which:

(1) Creates a substantial risk of death;

(2) Causes serious permanent or serious protracted disfigurement;

(3) Causes serious permanent or serious protracted loss of the function of any bodily member or organ; or

(4) Causes serious permanent or serious protracted impairment of the function of any bodily member or organ.

### § 12A. Second degree assault.

(a) *General Prohibition.* —A person may not commit an assault.

(b) *Violation; penalties.*—A person who violates this section is guilty of the misdemeanor of assault in the second degree and on conviction is subject to a fine of not more than $2,500 or imprisonment for not more than 10 years or both.

### § 12A–1. First degree assault.

(a) *Serious physical injury; use of a firearm.*—(1) A person may not intentionally cause or attempt to cause serious physical injury to another.

(2) A person may not commit an assault with a firearm. . . .

(b) *Penalty.*—A person who violates this section is guilty of the felony of assault in the first degree and on conviction is subject to imprisonment for not more than 25 years.

■ Petitioner contends that the 1996 Act abolished the common law crimes of assault and battery.[5] Petitioner's argument is that the Act accomplished three objectives. It repealed former §§ 12 and 12A of Article 27 that created and contained aggravated forms of assault; it established a two-tiered structure that defines all assaults and batteries as either first or second degree assault; and, it set out a statutory maximum penalty for the offenses.[6] Petitioner argues that

---

**5.** We note at the outset of our analysis that "there is no single crime in our State called 'assault and battery.' " *State v. Duckett,* 306 Md. 503, 510, 510 A.2d 253, 256 (1986). Rather, common law assault and battery are two closely related but distinct offenses. *Ford v. State,* 330 Md. 682, 699, 625 A.2d 984, 992 (1993). Throughout our analysis, we shall refer to the "crimes"—rather than the singular crime—of "assault and battery" in recognition of their being distinct offenses under the common law.

**6.** The common law crimes of assault and battery had no statutory penalty. The maximum term of imprisonment was ordinarily limited

although the enacted statutes did not abolish the common law concept underlying the crimes of assault and battery, the Legislature intended to establish a scheme that accounted for every form of those crimes. The State, on the other hand, argues that the General Assembly did not intend to abolish the common law crimes of assault and battery but rather, the purpose of the 1996 assault statutes was to prescribe a maximum penalty for the crimes of assault and battery and to specifically repeal the common law crimes of mayhem and maiming.

■ It is a generally accepted rule of law that statutes are not presumed to repeal the common law "further than is expressly declared, and that a statute, made in the affirmative without any negative expressed or implied, does not take away the common law." *Lutz v. State*, 167 Md. 12, 15, 172 A. 354, 356 (1934) (quoting 25 R.C.L. 1054). Where a statute and the common law are in conflict, or where a statute deals with an entire subject-matter, the rule is otherwise, and the statute is generally construed as abrogating the common law as to that subject. *Id.*, 172 A. at 356 (citing SUTHERLAND ON STAT. CONST. § 294; 12 C.J. 186); *Watkins v. State*, 42 Md.App. 349, 353–54, 400 A.2d 464, 467 (1979). *See also Irvine v. Rare Feline Breeding Center, Inc.*, 685 N.E.2d 120, 123 (Ind.Ct.App.1997) ("An abrogation of the common law will be implied ... where a statute is enacted which undertakes to cover the entire subject treated and was clearly designed as a substitute for the common law . . . ." (citation omitted), *transfer denied*, 698 N.E.2d 1183 (Ind.1998)).

---

only by the prohibition against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution and Articles 16 and 25 of the Maryland Declaration of Rights. *See Gerald v. State*, 299 Md. 138, 139, 472 A.2d 977, 978 (1984); *Simms v. State*, 288 Md. 712, 714, 421 A.2d 957, 958 (1980). Accordingly, the maximum sentence for common law assault or battery was limited by that which was considered reasonable and proportionate under the circumstances of the case, both as to the offense and as to the offender. *See Thomas v. State*, 333 Md. 84, 96, 634 A.2d 1, 7 (1993). *See also Epps v. State*, 333 Md. 121, 126, 634 A.2d 20, 23 (1993).

This brings us to the construction of the statutes in the present case. It is a cardinal rule of statutory construction to give effect to the intent of the Legislature. *Jones v. State,* 311 Md. 398, 405, 535 A.2d 471, 474 (1988). To be sure, the language of the 1996 assault statutes contain no specific words of repeal or abrogation, nor is there any conflict between those statutes and the common law. We have determined, however, that the statutes as adopted represent the entire subject matter of the law of assault and battery in Maryland, and as such, abrogate the common law on the subject. The 1996 statutes are more than mere penalty provisions for the common law offenses of assault and battery. They created degrees of assault unknown to the common law, and while retaining the common law elements of the offenses of assault and battery and their judicially determined meanings, the statutes repealed the statutory aggravated assaults and created new offenses.

Perhaps ironically, some of the best evidence that the 1996 assault statutes comprise more than just penalty provisions for the common law offenses of assault and battery, and that they actually abrogated those common law offenses, derives from the fact that the statutes explicitly repealed and replaced the entire *statutory* scheme for aggravated assaults then existent, *i.e.,* Assault with Intent to Murder, Ravish or Rob, Assault—Third Person Aiding One Being Assaulted, and Assault by Inmates, as well as the crime of Maiming. *See* 1996 Laws of Maryland, Ch. 632, § 1, at 3616–17 and 3629; Maryland Code (1957, 1992 Repl.Vol., 1995 Supp.) Article 27, §§ 11E, 12, 12A, and 384–86. The new statutes thus subsumed all previous statutory assault provisions as well as the common law into a single scheme and established a two-tiered regimen.

The dissent construes the 1996 assault statutes as merely establishing penalty provisions for different forms of common law assault and battery. Dissenting op. at 705. This interpretation ignores the critical fact that the new statutory scheme now incorporates within it all possible previous assault

crimes—common law as well as statutory forms. Prior to October 1, 1996, if a person committed a criminal assault, that crime might have fallen under one of the aggravated assault provisions alluded to above. But not all criminal assaults committed prior to October 1, 1996 fit within the statutory scheme existing at the time. Those assaults that fell outside the statutory provisions could be prosecuted under the common law. The dichotomy between assaults that could fit within the statutory provisions, and those that could not, ended, however, on October 1, 1996. Whether an assault committed prior to the new statutes' effect fit within the former statutory scheme for aggravated assaults, or fell under the common law for simpler offenses, the same assault committed after September 30, 1996 cannot help but fit within one of the new statutory provisions. *Any and all assaults*, no matter how simple or aggravated, now fit within § 12A, second degree assault, or § 12A-1, first degree assault.

The 1996 assault statutes thus accomplished much more than simply "establishing the penalties for different forms of common law assault and battery." *Id.*[7] By subsuming and

---

7. Drawing an analogy to murder and robbery, the dissent further maintains that "[t]he statutes at issue were intended to replace previous *penalty sections* covering aggravated assaults." Dissenting op. at 706 (emphasis added). The dissent also states, "Where ... the legislature has taken a single common law crime and subdivided it, creating statutory penalties for degrees of the crime, this Court has held that the common law crime is not abrogated by the statutory penalties." *Id.* at 707.

The dissent is incorrect that the former aggravated assault statutes were merely penalty provisions. Also, the analogy to murder and robbery is inapposite. The common law does not include any offense known as "aggravated assault" or "aggravated battery." *See* R.M. PERKINS & R.N. BOYCE, CRIMINAL LAW Ch.2, § 2, at 158 (3rd ed.1982). The now repealed aggravated assault statutes were obviously more than mere penalty provisions: the offenses were unknown to the common law and were created by the General Assembly. *See Williams v. State*, 323 Md. 312, 322, 593 A.2d 671, 676 (1991) ("[T]he aggravated assaults ... are creatures of statute."). Furthermore, if the dissent were correct that in the new statutes the Legislature was simply assigning penalties and dividing the common law crimes of assault and battery into degrees, then the result would be that the common law would be replacing the statutory offenses of aggravated assaults. There is no authority nor precedent for this view. The 1996 enactment expressly indicates that this Act repealed former §§ 12 and 12A of Article 27 and

combining all statutory offenses of assault then existent as well as all common law forms of assault and battery into a single and comprehensive statutory scheme, the 1996 assault statutes represent the entire subject matter of assault crimes. We therefore conclude that the new assault statutes, effective October 1, 1996, abrogated the common law offenses of assault and battery.

The legislative history of the 1996 assault statutes supports this conclusion. The 1996 Judiciary Committee's Bill Analysis of House Bill 749, cross-filed as Senate Bill 618, which the General Assembly enacted as Chapter 632 of the 1996 Laws of Maryland, recounts the origin of the legislation. As background information, the report notes that House Bill 749 was introduced at the behest of the Article 27 Revision Committee, a committee formed in 1992 by the President of the Senate and the Speaker of the House, and chaired by Chief Judge of the Court of Special Appeals, Joseph F. Murphy. 1996 Judiciary Committee, Bill Analysis, House Bill 749, at 2 (hereinafter, "1996 Jud. Comm. Bill Analysis, HB 749"). During the 1995 session, a bill to revise the assault laws was introduced at the request of the Article 27 Committee, but the measure failed.[8] *Id.* Following a hearing by the Judiciary Committee and study by the Article 27 Committee during the legislative interim, changes were made to simplify the 1995 version. *Id.* Hence, it is clear from the legislative history of the 1996

---

enacted new sections in lieu thereof. *See* 1996 Laws of Maryland, Ch. 632, § 1, at 3616–17. *See also* Editor's note to current §§ 12 and 12A. Unlike the murder and robbery statutes analogized by the dissent, the 1996 assault statutes did not take a single common law crime, subdivide it, and create statutory penalties. On the contrary, the new assault provisions expressly repealed all former statutory aggravated assault offenses, as well as the crime of maiming, incorporated all forms of the crimes of assault and battery—whether under the former statutes or the common law, and established a bifurcated penalty scheme applicable to any and all possible assault offenses. We therefore consider our interpretation of the murder and robbery statutes inapposite to assault and are further persuaded of the Legislature's implicit intent to repeal the common law offenses of assault and battery.

**8.** The 1995 version was filed as House Bill 844 and cross-filed as Senate Bill 513 of the 1995 General Assembly of Maryland.

assault statutes that this legislation originated during the General Assembly's 1995 session, underwent some revision, and then became law the following year.[9]

The Senate Judicial Proceedings Committee's Bill Analysis of Senate Bill 618 indicates that "[a]lthough Senate Bill 618 retains the common law meanings of ['assault' and 'battery'], it is clear under the bill that the term 'assault' includes all aspects of the law on assault and battery." 1996 Senate Judicial Proceedings Committee, Bill Analysis, Senate Bill 618, at 3. In addition, this report states that "the Committee to Revise Article 27 felt that the current law on crimes related to physical injury should be in one place in the Code, *rather than in several different places and in the common law.*" *Id.* (emphasis added). *See also* 1996 Jud. Comm. Bill Analysis, HB 749, at 3; 1996 Senate Judicial Proceedings Committee, Floor Report, Senate Bill 618, at 3; 1996 Senate Judicial Proceedings Committee, Floor Report, House Bill 749, at 3.

In addition to enacting the current assault statutes, Chapter 632 of the 1996 Laws of Maryland amended § 9–106 of the Courts and Judicial Proceedings Article, a statute dealing with the admission of testimony by the spouse of a person charged with a crime. In a Committee Note appended to this statute, the Committee to Revise Article 27 stated, "The revision of the assault laws *replaces the common law crime of assault and battery* with the statutory crimes of assault in the first or second degree." Maryland Code (1974, 1995 Repl.Vol., 1997 Supp.) § 9–106 of the Courts and Judicial Proceedings Article (emphasis added); 1996 Laws of Maryland, Ch. 632, § 1, at 3632. While cognizant that "the Committee Notes and catch-lines contained in this Act are not law," 1996 Laws of Mary-

---

9. The major revisions to the 1995 version consisted of the reduction in the number of categories of offenses to two and the elimination of special classes of protected persons, such as police officers and prison guards. *See* 1996 Judiciary Committee, Bill Analysis, House Bill 749, at 2; 1996 Senate Judicial Proceedings Committee Bill Analysis, Senate Bill 618, at 2–3. We view these revisions as having in no way altered the general purpose of the statutes or overall intent of the Legislature in subsequently enacting the revised assault legislation.

land, Ch. 632, § 2, at 3633, we nonetheless find this statement persuasive evidence of the legislative intent to abrogate common law assault and battery.

Moreover, as precursors a year earlier to House Bill 749 and Senate Bill 618, House Bill 844 and Senate Bill 513 of the 1995 General Assembly very clearly expressed the same general purposes relevant to our analysis here. The Judiciary Committee's Bill Analysis of 1995 House Bill 844 described those legislative purposes as follows:

> This bill revises, both stylistically and substantively, the current statutory laws governing assault [and] . . .
>
> . . . *reorganizes all laws dealing with assault into one coherent statutory scheme.* The new offenses are categorized into four degrees of assault patterned after the current statutory structure for arson, sexual offenses and burglary.

> \* \* \* \* \* \*

> Some of the current assault provisions are reflected in the new crimes that are created in the bill. . . . However, other offenses are repealed in their entirety and the substance is absorbed in other sections. . . . Also, *the common law crime of assault and battery is replaced* with the four new degrees of assault.[10]

*Id.* at 1 (emphases added). *See also* 1995 Senate Judicial Proceedings Committee, Bill Analysis, Senate Bill 513, at 1; 1995 Senate Judicial Proceedings Committee, Floor Report, Senate Bill 513, at 1. Our review of the legislative history of the 1996 assault statutes leads us to conclude that the General

---

**10.** One of the chief simplifications of the 1995 version accomplished by the enacted 1996 version was that "[i]nstead of four degrees of assault (or the three degrees after amendment in the Senate in the 1995 Session), the current bill only has *two* degrees." 1996 Judiciary Committee, Bill Analysis, House Bill 749, at 2; 1996 Senate Judicial Proceedings Committee, Bill Analysis, Senate Bill 618, at 2; 1996 Senate Judicial Proceedings Committee, Floor Report, Senate Bill 618, at 3; 1996 Senate Judicial Proceedings Committee, Floor Report, House Bill 749, at 3.

Assembly clearly intended the statutes to encompass the entire subject of assault and battery and to abrogate the common law on the subject.

This Court reached a similar conclusion when we considered the consolidated theft statute as it related to the common law crime of larceny. In *West v. State*, 312 Md. 197, 539 A.2d 231 (1988), we concluded that the common law crime of larceny was abrogated by the enactment of the consolidated theft statute as it was "now subsumed in Maryland's consolidated theft statute, Md.Code . . . Article 27, Sections 340–344, which merge[d] all the formerly distinct larceny-like common law offenses, as well as the offense of receiving stolen property, into a single crime of theft." *Id.* at 202–03 n. 1, 539 A.2d at 233 n. 1 (citing *Rice v. State*, 311 Md. 116, 532 A.2d 1357 (1987)).

In *Watkins v. State*, 42 Md.App. 349, 400 A.2d 464, the Court of Special Appeals considered the question "whether the adoption of Article 27, Sec. 139, the statutory law of escape, abrogated the common law offense of escape." *Id.* at 352, 400 A.2d at 466. The intermediate court held that the Legislature intended to abrogate the common law, and the appellant's conviction on the common law offense of escape was a nullity. *Id.* at 354–55, 400 A.2d at 467–68. Judge Liss, writing for the court, reasoned:

> We find that the statute simplified the common law by consolidating the three types of escape into one statute and making all escape a felony. The statute as adopted represented the entire subject matter of the law of escape in Maryland and thereby abrogated the common law of escape and its several classifications as well as the distinction among various acts of escape as misdemeanors or felonies. We hold that the adoption of the escape statute was, in effect, the equivalent of the wooden stake in the heart of Dracula which made impossible the resurrection of the common law by the declaration of the trial judge that the escape statute was unconstitutional.

*Id.* at 354, 400 A.2d at 467. Both the *West* court and the *Watkins* court were considering statutes, regarding theft and escape, respectively, that lacked an express repeal of the common law yet nevertheless held those statutes to abrogate the related common law offenses.[11] We in turn hold that the

---

**11.** The dissent relies heavily on Maryland's murder and robbery statutes, Article 27, §§ 407–413 and §§ 486 and 488, respectively, and the fact that this Court has interpreted those statutes as not having abrogated the related common law crimes. *See* Dissenting op. at 707 – 10; *Hardy v. State*, 301 Md. 124, 137–38, 482 A.2d 474, 481–82 (1984); *West v. State*, 312 Md. 197, 202, 539 A.2d 231, 233 (1988); and *Grimes v. State*, 290 Md. 236, 243, 429 A.2d 228, 231 (1981). Contrary to the dissent's claim that our decision today "has effectively overruled the many cases holding that murder and robbery still are common law crimes and retain their common law meaning," Dissenting op. at 711, we find our interpretation of the murder and robbery statutes wholly inapposite to the assault legislation, *see supra* note 7, and therefore neither intend nor imply any overruling of a single case interpreting those statutes.

Unlike the 1996 assault statutes, the 1809 division of the single common law crime of murder into first and second degrees under this State's statutory law for purposes of different punishments involved no revision of prior statutory law and hence those statutes acted solely as penalty provisions. *See Gladden v. State*, 273 Md. 383, 389–90, 330 A.2d 176, 180 (1974). Moreover, none of the murder statutes proscribes any act per se nor does any of the statutes add elements to the crime of murder that were unknown to the common law. Instead, each statute simply defines how different forms of murder shall be classified or punished. For instance, § 407 states in full, "All murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of wilful, deliberate and premeditated killing shall be murder in the first degree." Meanwhile, § 412(b) provides that persons convicted of first degree murder, if at least eighteen years old and not mentally retarded at the time of the murder, shall be punished by death, life imprisonment without the possibility of parole, or life imprisonment.

Similarly, the original enactment of the robbery statutes, §§ 486 and 488, involved no substantive revision or repeal of any prior statutory offenses but rather only established different levels of punishment for the underlying common law offense. *See Whack v. State*, 288 Md. 137, 140, 416 A.2d 265, 266 (1980). Nor do the robbery statutes proscribe any act per se or add any elements to the crime of robbery. They merely state that persons convicted of the crime of robbery or robbery with a deadly weapon are guilty of a felony and are subject to certain penalties.

In stark contrast, the 1996 assault statutes, again, repealed and replaced prior statutory law while incorporating the common law; added elements to the crime of assault that are unknown to the common law; and expressly proscribed and set penalties for the com-

adoption of the assault statutes abrogated the common law crimes of assault and battery as of October 1, 1996.

## III.

Our inquiry does not end with the determination that as of October 1, 1996, the common law crimes of assault and battery are no longer cognizable in this State. The petition for certiorari presented a second question for our review: "Did the State fail to prove that the alleged offense occurred at a time when common law assault and battery was a cognizable crime in Maryland?" Petitioner argues that a court lacks power to render a verdict under a charging document which does not charge an offense within its jurisdiction proscribed by the common law or by statute. He points out that the only conviction in this case was for common law assault and battery, under a charging document alleging that Petitioner committed the charged crimes on or about September 7 through October 30, 1996. Since the State entered a *nolle prosequi* to the statutory second degree assault charge, the State was required to prove that Petitioner committed the crime before October 1, 1996, when common law assault and battery were still cognizable in Maryland. We agree.

In this case, Count five of the indictment, charging common law assault and battery, alleged that the offenses took place "on or about the 7th day of September, nineteen hundred and ninety-six, through the 30th day of October, nineteen hundred and ninety-six." C.W. testified that the incident took place before her birthday and the State informed the court that C.W. had previously stated that the incident took place after she began school, thus placing the event between September 7 and October 30, 1996.

---

mission of various types of assault. Finally, no succeeding amendment to the murder and robbery statutes has ever abolished the statutory scheme in place out of a preference for an entirely new and exhaustive scheme for the prosecution of such crimes, which is exactly the effect of the Legislature's 1996 revamping of the crimes of assault.

■ "A claim that a charging document does not charge an offense may be raised at any time. Maryland Rule 4–252(c)." *Townes v. State*, 314 Md. 71, 74, 548 A.2d 832, 833 (1988). As Chief Judge Murphy pointed out, writing for the Court in *Williams v. State*, 302 Md. 787, 490 A.2d 1277 (1985):

> Manifestly, where no cognizable crime is charged, the court lacks fundamental subject matter jurisdiction to render a judgment of conviction, i.e., it is powerless in such circumstances to inquire into the facts, to apply the law, and to declare the punishment for an offense.

*Id.* at 792, 490 A.2d at 1279 (citations omitted).

■ The crimes of common law assault and battery existed through September 30, 1996. Contrary to Petitioner's assertion that the circuit court lacked jurisdiction, we find that the indictment charging Petitioner with common law assault and battery on or about September 7 through October 30, 1996 was legally adequate to charge an offense and that the circuit court had fundamental jurisdiction[12] to hear the criminal charges pending against Petitioner. *See Powell v. State*, 324 Md. 441, 446, 597 A.2d 479, 482 (1991). The crimes of common law assault and battery were still cognizable between September 7 and September 30, 1996. The indictment's extended time frame from October 1 to October 30, 1996 did not defeat the trial court's jurisdiction. Rather, the expiration of the common law crimes on September 30, 1996 simply limited the time frame upon which Petitioner could be convicted of assault and battery. We therefore hold that the charging document properly charged an offense within the jurisdiction of the trial court and one proscribed by the common law.

■ At trial, Petitioner did not challenge the court's jurisdiction; instead, he requested the trial judge to enter judgment in his favor on all counts. A criminal defendant may move for judgment of acquittal and when so doing, shall state

---

12. "Fundamental jurisdiction" means "the power residing in [a] court to determine judicially a given action, controversy, or question presented to it for decision." *Pulley v. State*, 287 Md. 406, 415, 412 A.2d 1244, 1249 (1980) (citations omitted).

with particularity all reasons why the motion should be granted. Maryland Rule 4–324. Petitioner moved for judgment at the close of the State's case and again at the close of all the evidence. Defense counsel argued to the trial court three bases for granting the motion for judgment of acquittal: duplicity, lack of specificity, and sufficiency of the evidence. He was wrong on the first two grounds, but partially correct on the third ground. As we have indicated, the indictment was not duplicitous: no one count of the indictment charged more than one substantive offense.[13] As to lack of specificity, the trial court essentially ruled that because defense counsel was raising lack of specificity for the first time at the close of the State's case, the issue had been waived. The trial court was correct. Objections based on defects in the indictment, other than that the indictment failed to show jurisdiction of the court or to charge an offense, must be raised by motion before trial, or the objections are waived. Maryland Rule 4–252(a)(2); *see* Rule 4–252(c) (A mandatory motion shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 4–213(c), except when discovery discloses the basis for a motion, the motion may be filed within five days after the discovery is furnished). *See also Campbell v. State*, 325 Md. 488, 503, 601 A.2d 667, 674 (1992) (stating that defendant's failure to file timely motion attacking indictment as defective for omitting specifics of charge of "conspiracy to violate controlled dangerous substances law" constituted waiver of such defects). Petitioner's objections as to lack of specificity, as well as duplicity, raised for the first time after the trial commenced, were therefore waived.

As to sufficiency of the evidence, the Court of Special Appeals treated Petitioner's central claim, that the State failed to prove that the offense upon which the jury convicted him occurred at a time when common law assault and battery were cognizable crimes in Maryland, as a "sufficiency of the evidence issue." The intermediate court summarized Petitioner's

---

**13.** *See supra* note 4.

argument as follows: because the State could not pinpoint whether the act occurred before the new statutes took effect, the evidence was insufficient to convict him of common law assault and battery.

The State's evidence as to the time of the incident consisted of C.W.'s testimony that Robinson assaulted her sometime before her birthday on October 30th and Anthony's testimony that sometime between the beginning of the school year, September 7th, and C.W.'s birthday, C.W. told him that "something happened" to her. Petitioner testified that he recalled an incident from one Sunday in "the end part of September." C.W. emerged from the bedroom while her father was in the bathroom and asked Petitioner who had put her to bed, to which Robinson responded, "Your father." According to Petitioner, C.W.'s father returned from the bathroom and confirmed to C.W. that he was the one who had put her to bed. Based on this evidence, the jury could have concluded that Petitioner committed the alleged assault on C.W. prior to October 1, 1996. The evidence was therefore sufficient to support Petitioner's conviction of common law assault and battery until September 30, 1996. *See State v. Albrecht,* 336 Md. 475, 479, 649 A.2d 336, 338 (1994) (Evidence is sufficient to support a conviction on appeal if, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (quoting *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979))).

The real weakness of the State's only remaining strand of its case against Petitioner on the assault and battery charge lies not in any jurisdictional defect in the indictment or in the sufficiency of the evidence as related to the time period from September 7th through September 30th. Rather, the remaining problem resides in trial error, in that the court permitted the jury to speculate whether the criminal act occurred after or before October 1st. If the jury convicted Petitioner of common law battery based upon conduct which

occurred after September 30, 1996, Petitioner was convicted of a crime which was no longer an offense in Maryland. Accordingly, Petitioner's conviction must be reversed and the case remanded for a new trial on the charge of common law assault and battery with respect only to conduct committed prior to October 1, 1996.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THE CASE FOR NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.*

Dissenting opinion by CHASANOW, J., in which CATHELL, J., joins.

CHASANOW, Judge, dissenting:

The majority holds that "the adoption of the assault statutes abrogated the common law crimes of assault and battery as of October 1, 1996." 353 Md. 683, 701, 728 A.2d 698, 706 (1999). I respectfully dissent.

If the common law crimes of assault and battery are abrogated by the statutory enactment of the three referenced assault statutes and if the common law crimes cease to exist, then the effect is to freeze common law assault battery as it was at the time it went out of existence and was replaced by the statutes. The best indication that this is not what was intended and the best indication that the assault statutes are merely penalty statutes establishing the penalties for different forms of common law assault and battery can be found in the published committee note by the committee that drafted the statutes. It states:

"COMMITTEE NOTE (COMMITTEE
TO REVISE ARTICLE 27)

Similar to the revision of the burglary law, the Committee has chosen to retain the judicially determined meanings of

the terms 'assault,' 'battery,' and 'assault and battery.' The meaning of these terms has been extensively developed at common law and case law. *See e.g., Lamb v. State,* 93 Md.App. 422, 613 A.2d 402 (1992). Also, as with the burglary revision, the Committee does not intend to 'freeze' the meanings of these terms, but expects that they will continue to be clarified when appropriate in future case law."

Maryland Code (1957, 1996 Repl.Vol.), Article 27, § 12. It seems clear that the intent was to continue the common law crimes and the judicial development of assault and battery, rather than repeal or abrogate the common law crimes and have all new development of assault and battery a matter of statutory interpretation and ascertaining what the legislative intent was at the time the common law was abrogated.

A further indication that the legislature did not intend to subdivide common law assault and battery into two separate distinct statutory crimes, but instead intended to establish two different penalties for common law assault and battery can be found in § 12A–4(c), "Lesser included offense.—A charge of assault in the first degree also charges a defendant with assault in the second degree." The whole statutory scheme is consistent with enacting two penalties for all of the acts that constitute different forms of common law assault and battery. Every aspect of the legislation seems to contemplate continuation of the common law offense as well as ongoing judicial development of that crime. *See, e.g.,* § 12A–3 stating: "A person charged with an offense under this subheading is entitled to assert any judicially recognized defense." The legislation under review is much more consistent with maintaining common law assault and battery, but establishing two penalties; one for the more aggravated degree and one for the lesser degree of the crime, and there is nothing to indicate an intent to create two new crimes and abrogate the common law offense.

The statutes at issue were intended to replace previous penalty sections covering aggravated assaults. Our construction of the replaced statutes has some relevancy to the construction of the new assault statutes. In *Gleaton v. State,* 235

Md. 271, 201 A.2d 353 (1964), the defendant argued that his ten-year sentence for common law assault was unlawful in view of the statutorily prescribed penalties for the statutory offenses of assault with intent to murder (fifteen years) and assault with intent to maim (ten years). This Court rejected that contention, noting that the penal limits for statutory assaults did not imply a legislative policy to limit the sentences for common law assault to not greater than those prescribed for statutory assault. *Id.* at 277, 201 A.2d 353. The Court stated: "Statutes in derogation of the common law are strictly construed, and it is not to be presumed that the legislature by creating statutory assaults intended to make any alteration in the common law other than what has been specified and plainly pronounced." *Id. See also Roberts v. Warden,* 242 Md. 459, 460–61, 219 A.2d 254, 255, *cert. denied,* 385 U.S. 876, 87 S.Ct. 156, 17 L.Ed.2d 104 (1966)(holding that creation of statutory assaults was not intended to make any alteration in common law other than what was specified and plainly pronounced). Additionally, as will be discussed, when construing similar statutes this Court has adopted a presumption that the legislature did not intend to abrogate the common law crime.

## ANALOGOUS STATUTES

Where, as in the instant case, the legislature has taken a common law crime and subdivided it, creating statutory penalties for degrees of the crime, this Court has held that the common law crime is not abrogated by the statutory penalties. The primary examples are our first and second degree murder statutes, §§ 407–413. What we said in *Hardy v. State,* 301 Md. 124, 482 A.2d 474 (1984), is equally applicable to the instant case, including our prior discussion about the charging documents:

"In 1809, the General Assembly enacted a comprehensive codification of various common-law offenses. [Chapter] 139 of the Acts of 1809. This legislation, modeled on a 1794 Pennsylvania statute, divided the crime of murder, as known at common-law, into first and second degree murder. *See Campbell v. State,* 293 Md. 438, 441, 444 A.2d 1034, 1036

(1982). In a seminal decision interpreting this 1809 Maryland law, our predecessors stated that this law did 'not create a new offense in distinguishing between murder of the first and second degrees. The design was to discriminate in awarding the punishment[,]' *Weighorst v. State,* 7 Md. 442, 451 (1855), not to define new crimes. *Davis v. State,* 39 Md. 355, 373 (1874). Thus, from *Weighorst* to the present, we have consistently maintained that the 1809 Act did not abolish the common-law concept of murder, but merely divided it into degrees for punishment purposes. *E.g., Campbell v. State, supra,* 293 Md. at 441, 444 A.2d 1034; *State v. Ward, supra,* 284 Md. at 205, 396 A.2d 1041; *Newton v. State,* 280 Md. 260, 268, 373 A.2d 262 (1977); *Gladden v. State,* 273 Md. 383, 389–90, 330 A.2d 176 (1974); *Stansbury v. State,* 218 Md. 255, 260, 146 A.2d 17 (1958); *Davis v. State, supra,* 39 Md. at 374; *Weighorst v. State, supra,* 7 Md. at 451. That one may be charged with common-law murder in lieu of the shortened statutory form prescribed in § 616 of Article 27 is well-settled. *State v. Ward, supra,* 284 Md. at 200–01, 396 A.2d 1041; *Wood v. State, supra,* 191 Md. at 667, 62 A.2d 576. Equally well-settled is that one may be convicted of first-degree murder under an indictment charging common-law murder. Our predecessors originally noted this proposition in *Davis v. State, supra:*

'When, therefore, a person is indicted for murder, in the technical language of the common law, he is charged with a crime, which in its proper sense, includes all circumstances of aggravation, and as all minor degrees are included in the major, he is liable to be convicted of the inferior, as well as of the higher grades of that offense, and *vice versa.*'

39 Md. at 374.

Based on these principles an indictment charging common-law murder is sufficient to sustain a conviction for either first or second-degree murder or manslaughter. Evidence presented at trial and the verdicts will determine the level of criminal culpability and hence the punishment for the

offense. Our research has not revealed any Maryland appellate decision that has questioned the validity of these principles." (Footnote omitted)

301 Md. at 137–138, 482 A.2d at 481–82. Similarly when the legislature established penalties for robbery and robbery with a dangerous weapon by Md.Code (1957, 1987 Repl.Vol.), Art. 27, § 486 and § 488, this Court in several cases held that robbery retains its common law definition in Maryland, but that the penalties for armed and unarmed robbery are fixed by statute. *See, e.g., Bowman v. State,* 314 Md. 725, 729, 552 A.2d 1303, 1305 (1989); *West v. State,* 312 Md. 197, 202, 539 A.2d 231, 233 (1988).

In *Grimes v. State,* 290 Md. 236, 429 A.2d 228 (1981), we explained a primary difference between creating two statutory degrees of the same common law offense by two penalty statutes and creating two new statutory offenses, as well as the reason why the former construction is preferred. We said:

"The view that different statutory provisions may constitute the same crime, although in different degrees, has been taken by this Court with respect to certain common law offenses. Typically, this arises when the Legislature deals with a single common law offense and, without changing the basic common law elements of that offense, divides it for purposes of punishment because of the presence or absence of aggravating or mitigating factors. Thus, murder was one offense at common law, but, for purposes of punishment depending upon the presence or absence of premeditation and deliberation, the Legislature has classified it into two degrees. Similarly, robbery remains a single common law offense, but the Legislature, in separate statutory sections (Art. 27, §§ 486 and 488) has provided greater punishment if a dangerous or deadly weapon is used. However, with regard to such offenses, the greater degree includes the lesser degree. The lesser degree of the same offense 'must be treated as a lesser included offense,' *Sweetwine v. State,* 288 Md. 199, 201 n. 1, 421 A.2d 60, *cert. denied,* 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980), and cases cited.

Because of the consistent holdings of this Court that §§ 32 and 342 are mutually exclusive insofar as they encompass storehouse breaking with larcenous intent, the two statutes could not constitute different degrees of the same offense as this Court has used that concept. Moreover, neither statute embodies a common law offense. Rather, the offenses embraced by the two statutes are legislative creatures."

*Grimes*, 290 Md. at 243–44, 429 A.2d at 231–32. The same reasoning we applied when construing the murder and armed robbery statutes ought to be applied to the analysis of the assault statutes.

## THE RATIONALE OF THE MAJORITY

The majority acknowledges that "[i]t is a generally accepted rule of law that statutes are not presumed to repeal the common law 'further than is expressly declared, and that a statute, made in the affirmative without any negative expressed or implied, does not take away the common law.' *Lutz v. State*, 167 Md. 12, 15, 172 A. 354, 356 (1934)(quoting 25 R.C.L. 1054)." 353 Md. at 693, 728 A.2d at 702. Why then does the majority reject this principle and hold that the common law crimes of assault and battery are abrogated by the statutes? It states:

"To be sure, the language of the 1996 assault statutes contain no specific words of repeal or abrogation, nor is there any conflict between those statutes and the common law. We have determined, however, that the statutes as adopted represent the entire subject matter of the law of assault and battery in Maryland, and as such, abrogate the common law on the subject. The 1996 statutes are more than mere penalty provisions for the common law offenses of assault and battery.. They created degrees of assault unknown to the common law, and while retaining the common law elements of the offenses of assault and battery and their judicially determined meanings, the statutes repealed the statutory aggravated assaults and created new offenses."

353 Md. at 694, 728 A.2d at 703. Whenever it creates penalties for common law offenses, as in the assault statutes, as well as the murder and robbery statutes, the legislature obviously does not intend to leave loopholes or gaps so every statute establishing penalties for a common law offense is intended to cover "the entire subject matter" of the common law offense. In addition, every statutory scheme providing penalties for a common law offense divides the offense into degrees "unknown to the common law." Neither of the reasons cited by the majority justify departing from the presumption that, merely by establishing penalties for a common law offense such as murder and robbery, the legislature did not intend to abrogate the common law crimes. Indeed, if the reasoning in the instant case is followed, the Court has effectively overruled the many cases holding that murder and robbery still are common law crimes and retain their common law meaning.

When the instant case was heard in the Court of Special Appeals, a three-judge panel that included Chief Judge Joseph Murphy, the Chair of the committee that drafted the assault legislation, held that the statutes at issue merely provided penalties for common law assault and battery and did not abrogate the common law crimes. Its unreported opinion stated in part:

"[T]he language indicates a preference for retaining the common law by stating '[e]xcept as otherwise provided in this subheading, "assault" means the offense of assault, battery, and assault and battery, which terms *retain their judicially determined meanings.*' § 12(b)(emphasis added). While the language does not affirmatively retain the common law crime *per se,* the statute clearly intends to retain and promote the common law that had evolved up to the time the statute was enacted. Moreover, there is no conflict whatever between the statutory definition of second degree assault and the common law offenses of assault, assault and battery, and battery. Unless aggravated to the greater offense of first degree assault by the use of a firearm or intent to cause serious physical injury, the common law

offenses are second degree assault, for which the statute now provides a maximum penalty.

Reviewing the legislative history of this statute is also instructive. Although the records are scant, our review of the bill file does not indicate an intent of the legislature to abolish the common law offense of assault and battery. For example, 1996 Md. Laws, Chap. 632, the precursor to the present statute, states the act was drafted

> '[for] the purpose of *revising and restating* the laws concerning crimes involving physical injury and threatened physical injury; *replacing provisions of law on assault with intent to commit certain offenses ...;* establishing the crimes of first and second degree assault ...; *repealing crimes related to mayhem and maiming;* making stylistic, conforming, and substantive changes to statutory provisions that include references to assault-related offenses; ... *repealing* an obsolete reference; ... and generally relating to the law of assault and crimes involving threatened and actual physical harm. (Emphasis added).'

Letters and summaries within the bill file recite much of the same language.

What we find most persuasive is the legislature's choice of wording with regard to the effect of this bill. For instance, the above section states the act was to revise, restate, or replace the common law and prior assault statutes laws, not to ‘repeal or abolish them. It does specifically repeal, however, the common law crimes of mayhem and maiming. Had the legislature intended on repealing the common law crime of assault in favor of the sections 12, 12A, and 12A-1, it clearly could have done so.

Notwithstanding the lack of apparent legislative intent to repeal common law assault and battery, the statute actually ‘moves up’ certain types of assaults to felonies, thus increasing the magnitude of the status of the crime and often the sentences imposed for certain particularly egregious acts. *See* Art. 27, § 12A. The result is not a repeal or removal of the common law crime; it reclassifies certain conduct and

prescribes certain penalties for it. Therefore, the codification of this assault and battery statute really is more of a punishment statute than one attempting to supplant a common law crime." (Footnote omitted).

I agree with the analysis of the Court of Special Appeals and would, consistent with our prior decisions construing similar statutes, hold that in enacting the assault statutes the legislature intended to divide common law assault and battery into degrees and did not intend to abrogate the common law crimes. I would affirm Robinson's conviction.

Judge CATHELL has authorized me to state that he joins in the views expressed in this dissenting opinion.