*WSC/2005 LLC, et al. v. Trio Ventures Associates, et al.*, No. 75, September Term, 2017, Opinion by Adkins, J.

**ARBITRATION — MARYLAND UNIFORM ARBITRATION ACT — VACATING ARBITRATION AWARD — GROUNDS — MANIFEST DISREGARD OF THE LAW:** The Maryland Uniform Arbitration Act ("MUAA"), Md. Code (1973, 2013 Repl. Vol.), § 3-224(b) of the Courts and Judicial Proceedings Article ("CJP") sets forth numerous grounds upon which a circuit court shall vacate an arbitration award. The common-law vacatur ground of "manifest disregard of applicable law" has existed in Maryland for centuries. The Court of Appeals held that, although it is not mentioned in CJP § 3-224(b), manifest disregard of applicable law is a proper ground to vacate an arbitration award under the MUAA. The Court of Appeals further held that the Circuit Court for Montgomery County correctly concluded that the Arbitrator's award did not manifestly disregard applicable law.

**ARBITRATION — MARYLAND UNIFORM ARBITRATION ACT — VACATING ARBITRATION AWARD — ATTORNEY'S FEES:** The MUAA permits an attorney to recover fees incurred when vacating or confirming an arbitration award in court. Md. Code (1973, 2013 Repl. Vol.), § 3-228(b) of the Courts and Judicial Proceedings Article ("CJP") provides that "[a] court may award costs of the petition, the subsequent proceedings, and disbursement." The Court of Appeals held that a circuit court has discretion in deciding to award attorney's fees under CJP § 3-228(b), and the Circuit Court did not abuse its discretion in declining to award attorney's fees.

IN THE COURT OF APPEALS

OF MARYLAND

No. 75

September Term, 2017

WSC/2005 LLC, et al.

v.

TRIO VENTURES ASSOCIATES, et al.

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Adkins, J.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

Filed: July 30, 2018

Arbitration is a procedure frequently imposed by contract but seldom the topic of Maryland appellate decisions. In this appeal, we determine whether a court may vacate an arbitrator's decision for manifest disregard of applicable law even though such a ground is not listed in the Md. Code (1973, 2013 Repl. Vol.), § 3-224(b) of the Court and Judicial Proceedings Article ("CJP"). Applying this standard, along with the express statutory grounds to vacate arbitral awards, we then consider whether a circuit court erred in refusing to vacate the award in question.

## BACKGROUND

This commercial dispute centers on real properties located in Montgomery County, Maryland. The Washington Science Center Joint Venture ("WSCJV") owns land and commercial buildings on Executive Boulevard in Rockville, Maryland. Although the WSCJV owns several properties, only two are relevant to this appeal: 6100 Executive Boulevard and 6011 Executive Boulevard. Respondents Trio Venture Associates, Myron Levin, Jean Levin, Lawrence Guss, and the Guss Family Limited Partnership (collectively "Trio") owned 58 1/3% of the WSCJV.

In 2005, Trio and the remaining joint venturers were embroiled in contentious litigation stemming from Trio's attempted sale of its ownership interest. During this litigation, the parties reached a settlement. As part of the settlement, Trio sold its ownership interest to Petitioners WSC/2005 LLC, and Simon and Ruth Wagman (collectively "WSC").

The parties set out the terms of this transfer in a Purchase and Sale Agreement ("PSA"). The PSA provided several detailed provisions regarding the price WSC would

pay for Trio's ownership interest. Paragraphs 3.A–3.C required an initial payment of $10 million from WSC to Trio. Paragraph 3.E also required WSC to pay an additional $3.5 million if one of two things happened. First, the payment was required if the government tenants at 6011 or 6100 Executive Boulevard renewed their leases for at least ten years. Second, payment was required if, in the event that the government tenants did not renew, both 6011 and 6100 Executive Boulevard, "in the aggregate are not less than seventy-five percent (75%) leased to and occupied by tenants for terms of not less than five (5) years in each case (excluding options) . . . ." This paragraph also provided that it was "understood that WSCJV [would] use commercially reasonable efforts to obtain renewal leases on terms and conditions acceptable to WSCJV as soon as is practical."

The parties signed the PSA on August 17, 2005. One year later, WSC sold 6100 Executive Boulevard to a third party. Trio maintains that it did not receive notification of the sale. In 2010, Trio, still unaware that the property had been sold, sent an e-mail to WSC asking about the leasing status at both 6100 and 6011 Executive Boulevard. A representative from WSC responded by explaining that the government leases—which were in place when the property transferred from Trio to WSC—did not expire until 2014. The message indicated that the earliest time the payment under Paragraph 3.E would be due was 2014. According to Trio, it then ran a title search on 6011 Executive Boulevard in January of 2014, which revealed that WSC had sold the building. This discovery led to the dispute giving rise to this appeal.

Trio sent WSC a letter asserting that WSC had an obligation to lease 6100 Executive Boulevard and that Trio was misled into thinking that WSC remained the owner. The letter

2

argued that "the sale of [6100 Executive Boulevard] triggered the payment due under Paragraph 3.E [of the PSA]." After WSC refused to acknowledge any right to additional payment stemming from the sale of 6100 Executive Boulevard, Trio filed a demand for arbitration. The demand asserted five claims stemming from WSC's sale of the property: (1) payment due under terms of purchase and sale agreement; (2) payment due as a result of fraudulent contract performance; (3) payment due for failure to comply with commercially reasonable standards requirement; (4) payment due as a result of unjust enrichment; and (5) failure to provide information. WSC moved to dismiss the demand and argued that the PSA did not require an additional payment under Paragraph 3.E until the leasing condition occurred. According to WSC, the "leasing contingency" only required payment when the leases at the buildings were renewed, or if they were re-leased at certain thresholds.

Trio moved for summary judgment, arguing that the sale deliberately frustrated and destroyed any possibility that WSC could fulfill the leasing contingency. After a hearing on the motions, the Arbitrator issued an opinion dismissing some of Trio's claims,[1] but granting Trio's motion for summary judgment on the issue of whether WSC breached the PSA by selling 6100 Executive Boulevard. The Arbitrator concluded that the sale of 6100 Executive Boulevard breached the PSA and required WSC to pay Trio the $3.5 million fee specified in Paragraph 3.E. We shall discuss the reasoning of the Arbitrator's decision in more detail *infra*.

---

[1] The Arbitrator dismissed Trio's claims for: (1) fraud in the performance of a contract; (2) unjust enrichment; and (3) failure to provide information.

3

Shortly thereafter, WSC filed a petition to vacate the arbitration award in the Circuit Court for Montgomery County pursuant to CJP § 3-224. The petition argued that the Arbitrator "manifestly disregarded well-established Maryland law in several significant respects," and that the Arbitrator wrongly concluded that WSC breached the PSA by selling 6100 Executive Boulevard. Trio moved to dismiss the petition, arguing that WSC had not alleged any of the statutorily permitted vacatur grounds enumerated at CJP § 3-244(b). Trio also filed a request, pursuant to CJP § 3-228(a)(2), for the attorney's fees and costs incurred in defending and enforcing the arbitration award in the Circuit Court. After a hearing, the Circuit Court dismissed the petition. The order stated that the arbitration award did "not manifestly disregard applicable law" but denied Trio's request for attorney's fees and costs.

WSC filed a timely appeal in the Court of Special Appeals. The intermediate appellate court, in an unreported decision, affirmed the Circuit Court's order. *WSC/2005 LLC v. Trio Venture Assocs.*, Nos. 946, 1531 & 1784, 2017 WL 4422973, at *7 (Md. Ct. Spec. App. Oct. 5, 2017). The Court concluded that "the [A]rbitrator's award is fully supported by the language in the PSA and in accordance with applicable law." *Id.*

We issued a writ of certiorari to answer the following questions:[2]

---

[2] We have rephrased the questions presented. The questions presented in WSC's petition for writ of certiorari are:

    (1) Does a circuit court have the power under the Maryland Uniform Arbitration Act to vacate an arbitration award that is irrational or in manifest disregard of the law?

(1) May an arbitral award be set aside for manifest disregard of applicable law according to the MUAA?

(2) Did the arbitration award manifestly disregard applicable law?

(3) Does a circuit court have discretion to deny a request made, pursuant to CJP § 3-228(a)(2), for an award of the attorney's fees and costs incurred in defending or enforcing the arbitration award?

We hold that the MUAA does permit a party to challenge an arbitration award for manifest disregard of the law. According to this standard though, the Circuit Court correctly concluded that the Arbitrator's award did not manifestly disregard the law. We also hold that a circuit court has discretion to award or deny attorney's fees to a party seeking to vacate or confirm an arbitration award.

---

(2) Is an arbitral award that excuses a non-breaching party from proving that a condition precedent would have been satisfied but for the breach a manifest disregard of Maryland law or otherwise irrational because it (a) eliminates the requirement that plaintiffs must prove causation of their injury; (b) deprives the non-breaching party of the benefit of its bargain (what it would have received had no breach occurred); and (c) penalizes the breaching party and forfeits valuable contract rights?

Trio filed a cross-petition for writ of certiorari presenting a third question:

[(3)] Whether this Court's decision in *Blitz v. Beth Isaac Adas Israel Congregation*, 352 Md. 31, 720 A.2d 912 (1998), entitles a party who is granted an arbitration award to an award of attorneys' fees and costs in Court proceedings unsuccessfully pursued by the losing party, or does a Court have the discretion to deny such an award as in any other case in which legal fees and costs are sought.

## DISCUSSION

The MUAA is a comprehensive statute governing the arbitration process in Maryland. CJP §§ 3-201, *et seq.*; *Walther v. Sovereign Bank*, 386 Md. 412, 423–24 (2005). Once the arbitrator issues an award, the MUAA—CJP § 3-224(b) specifically—provides certain grounds upon which a circuit court shall vacate an award:

> (b) *Grounds*. — The court shall vacate an award if:
>
> (1) An award was procured by corruption, fraud, or other undue means;
>
> (2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;
>
> (3) The arbitrators exceeded their powers;
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 3-213 of this subtitle, as to prejudice substantially the rights of a party; or
>
> (5) There was no arbitration agreement as described in § 3-206 of this subtitle, the issue was not adversely determined in proceedings under § 3-208 of this subtitle, and the party did not participate in the arbitration hearing without raising the objection.

Subsection (c) further provides that "[t]he court **shall not** vacate the award or refuse to confirm the award on the ground that a court of law or equity could not or would not grant the same relief." (Emphasis added).

A circuit court's decision to grant or deny a petition to vacate or confirm an arbitration award is a conclusion of law, which we review without deference. *See, e.g.*,

*Prince George's Cty. Police Civilian Emps. Ass'n v. Prince George's Cty.*, 447 Md. 180, 192 (2016) ("An appellate court reviews without deference a trial court's ruling on a petition to vacate an arbitration award."). The parties agree on this point but dispute the appropriate standard upon which a court must evaluate the Arbitrator's award.

WSC maintains that the vacatur grounds set forth in CJP § 3-224(b) are not exclusive. Specifically, WSC argues that, in addition to the grounds set forth in subsection (b), a court may set aside an arbitration award when the award manifestly disregards applicable law. Although the MUAA provides specific grounds for vacatur, WSC contends that the statute was never intended to eliminate the common-law grounds of vacatur, chiefly manifest disregard of the law. Trio's response to this contention is sparse. Rather than addressing WSC's contention that the MUAA did not abrogate common-law vacatur grounds, Trio asserts that WSC has attempted to undo the Arbitrator's decision merely because it disagrees with the award. We begin by assessing whether the MUAA abrogates or otherwise eliminates the common-law vacatur grounds of "manifest disregard of applicable law."

**Manifest Disregard—Maryland Common-Law Origins**

Arbitration has been traditionally recognized as a "favored" method of dispute resolution. *See, e.g.*, *O'Ferrall v. De Luxe Sign Co.*, 158 Md. 544, 552 (1930) ("Arbitration is a method favored by law for the settlement of disputes."). This Court has often refused to review the merits of arbitration awards because the "purpose of arbitration is 'to compose disputes in a simple and inexpensive manner' . . . ." *Board of Educ. of Prince George's Cty. v. Prince George's Cty. Educators' Ass'n*, 309 Md. 85, 98 (1987) (quoting

7

*Roberts Bros. v. Consumers Can Co.*, 102 Md. 362, 368–69 (1905)).  Extensive judicial review would defeat that purpose.  *Id.*

In 1793, the General Court of Maryland[3] held that, in addition to the statutory review grounds that then existed, an arbitrator's decision could be set aside for reasons that "were **apparent on the face of the award**."  *Dorsey v. Jeoffray*, 3 H & McH. 81, 81 (Md. 1793) (emphasis added).  In 1802, the General Court again recognized that "[a] **palpable mistake** in law or fact, is good cause to set aside an [arbitration] award, if it is **apparent on the face of the award**."  *Goldsmith v. Tilly*, 1 H & J 221, 223 (1802) (emphasis added).  Years later in *Roloson v. Carson*, 8 Md. 208, 220–21 (1855), this Court wrote that "[m]istakes committed by [arbitrators] in drawing incorrect inferences, or forming erroneous judgments or conclusions, from facts, will not vitiate their awards; but when mistakes are relied upon for that purpose they must be gross and **manifest**."  (Emphasis added).  Later, we again recognized that the common law permitted vacatur of an arbitration award for a "mistake of law or fact . . . appearing on its face."  *Parr Constr. Co. v. Pomer*, 217 Md. 539, 544 (1958).

Likewise, our more recent decisions have recognized that, at common law, an arbitral award may be vacated for manifest disregard of the law.  In *Prince George's Cty. Educators' Ass'n*, 309 Md. at 105, we examined a similar challenge to an arbitration award.

---

[3] From 1776 to 1806, the General Court of Maryland exercised general and appellate jurisdiction.  It was abolished by the General Assembly in 1805 and its appellate jurisdiction was vested in the Court of Appeals of Maryland.  *See* Hon. Frederick W. Invernizzi, *The Historical Development of the Maryland Courts* 2–3 (August 1973) (unpublished manuscript) (on file with Maryland State Law Library).

There, the parties also disputed the exclusivity of the vacatur grounds provided by CJP § 3-224(b). In that case, we ultimately concluded that the arbitration agreement was not governed by the MUAA. *Id.* at 98. We did not affirmatively announce whether an arbitration award may be vacated only for the reasons enumerated in CJP § 3-224(b). *Id.* at 105. But we did explain that it "was firmly established as a common law principle in Maryland that mere errors of law or fact would not ordinarily furnish grounds for a court to vacate or to refuse enforcement of an arbitration award." *Id.* at 99 (citing *Roberts Bros. v. Consumers Can Co.*, 102 Md. 362, 368–69 (1905)). There are exceptions to this rule though—mainly, "fraud or for misconduct, bias, prejudice, corruption[,] or lack of good faith on the part of the arbitrator." *Id.* at 100 (citing, *inter alia*, *Chillum-Adelphi Volunteer Fire Dep't, Inc. v. Button & Goode, Inc.*, 242 Md. 509, 516–18 (1966)). We have also recognized an additional common-law ground for vacating an arbitrator's award: manifest disregard of applicable law. *Id.* at 101–02 ("[M]anifest disregard of the law must be something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." (quoting *San Martine Compania de Navegacion, SA v. Saguenay Terminals, Ltd.*, 293 F.2d 796, 801 (9th Cir. 1961))).

In *Downey v. Sharp*, 428 Md. 249 (2012), we again recognized manifest disregard as a means of vacatur available at common law but declined to go so far as to say that the statutory grounds enumerated at CJP § 3-224(b) permitted such a method of review. *Id.* at 265 ("[W]e shall not in the present case reach the issue of whether an award subject to § 3-224 of the Uniform Arbitration Act may properly be vacated by a reviewing court on the ground[] that it . . . demonstrates a 'manifest disregard of the law.'"). Yet again in 2012,

9

we acknowledged "manifest disregard" as a common-law ground for vacating an arbitration award. *Baltimore Cty. Fraternal Order of Police Lodge No. 4 v. Balt. Cty.*, 429 Md. 533, 564 (2012).[4]

Considering this line of cases, it is safe to repeat that Maryland recognizes manifest disregard of the law as a permissible common-law ground for vacating an arbitration award. The question we face in this appeal however, is whether the General Assembly, by adopting the MUAA, abrogated the common law in this respect.

## The MUAA

The General Assembly adopted the Uniform Arbitration Act in 1965. 1965 Md. Laws ch. 231 § 2, at 243–49. We recently explored the purpose of the MUAA in *American Bank Holdings, Inc. v. Kavanagh*, 436 Md. 457, 471–72 (2013), where we said:

> Enactment of the MUAA was intended to eviscerate the "well-established" common law rule that "unless an agreement to arbitrate has been consummated by an award, it will not bar a suit at law or in equity with respect to the question agreed to be arbitrated." . . . . [The] MUAA's purpose was "to provide for enforcement of written agreements to submit existing and future controversies to arbitration, to provide for court proceedings to compel or stay arbitration pursuant to written agreements," and "to provide procedures by which arbitration may be had" in Maryland.

---

[4] The MUAA did not apply in *Baltimore Cty. Fraternal Order of Police Lodge No. 4 v. Balt. Cty.*, 429 Md. 533 (2012). There, the Fraternal Order of Police challenged a change in healthcare benefits by Baltimore County. *Id.* at 539–41. The Fraternal Order of Police and the County agreed, in a memorandum of understanding, to arbitrate disputes. *Id.* at 538–39. The memorandum, however, did not call for the application of the MUAA. In arbitration between an employer and employees, CJP § 3-206(b) provides that the MUAA does not apply unless the arbitration agreement expressly calls for such application. *Id.* at 553 n.18; *see also* Md. Code (1973, 2013 Repl. Vol.), § 3-206(b) of the Court and Judicial Proceedings Article ("CJP").

(Citations omitted).

Before the adoption of the MUAA, Maryland common law allowed parties who had already agreed to submit a dispute to arbitration, to change their minds and refuse to participate or withdraw from the arbitration process prior to issuance of an award. *See, e.g.*, *Maietta v. Greenfield,* 267 Md. 287, 293 n.4 (1972). The Legislature adopted the MUAA to prevent such outcomes. The preamble to the legislation states:

> AN ACT to . . . provide for enforcement of written agreements to submit existing and future controversies to arbitration, to provide for court proceedings to compel or stay arbitration pursuant to written agreements, to provide procedures by which arbitration may be had in this State and for vacation, modification, correction or confirmation of awards and for entries of judgment or decree under arbitration, and to relate generally to regulation of arbitration in the State.

1965 Md. Laws ch. 231, § 2, at 243. This preamble demonstrates that the General Assembly intended to make agreements to arbitrate judicially enforceable. *See Allstate Ins. Co. v. Stinebaugh*, 374 Md. 631, 641 (2003) ("[The MUAA] expresses the legislative policy favoring enforcement of agreements to arbitrate."). WSC argues that the adoption of the MUAA in 1965 did not abrogate any then-existing common-law vacatur grounds.

Statutory abrogation of the common law is a familiar concept for this Court. "The General Assembly is authorized to change or abrogate the common law as it may think most conducive to the general welfare, provided it does not in the process run afoul of the federal and state constitutions." *Jones v. State*, 303 Md. 323, 343–44 (1985) (Cole, J., concurring). Although the Legislature may abrogate the common law through statutory enactments, we have also required a strong pronouncement from the Legislature as

11

evidence of an intention to do so. For abrogation to occur, "the statutory language must indicate an express abrogation or an abrogation by implication by adoption of a statutory scheme that is so clearly contrary to the common law right that the two cannot occupy the same space." *Nickens v. Mt. Vernon Realty Grp., LLC*, 429 Md. 53, 74 (2012) *holding superseded by statute* 2013 Md. Laws ch. 515 § 2, at 4690–91, *see also Suter v. Stuckey*, 402 Md. 211, 232 (2007) ("In construing a statute, it is a long-standing rule of statutory interpretation that the common law will not be repealed by implication."); 3 Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 61:1 (7th ed. 2017) ("A statute may take away a common-law right, but courts presume the legislature has no such purpose. If a common-law right is to be taken away, it must be noted clearly by the legislature.").

WSC points out—correctly—that the MUAA contains no such pronouncement of an intention to expressly abrogate the common-law vacatur grounds. We also agree that CJP § 3-224(b), although stating five grounds upon which a circuit court must vacate an arbitration award, does not indicate that these vacatur grounds are exclusive. Indeed, CJP § 3-224(c), which states the circumstances in which a circuit court cannot vacate an arbitration award, makes no mention of the common-law vacatur grounds.

But legislative abrogation of common law need not be express. Although abrogation by implication is highly disfavored, it is possible in two situations: field preemption and conflict preemption. Field preemption occurs if a new enactment repeals and replaces the entirety of the prior law on a comprehensive basis. *Genies v. State*, 426 Md. 148, 155 (2012) (citing *Robinson v. State*, 353 Md. 683, 728 (1999)). Conflict

12

preemption occurs when the new legislation has a clear incompatibility and disharmony with the common law, such that both the common law and the statutes cannot coexist. *Id.* (quoting *Lutz v. State*, 167 Md. 12, 15 (1934)).

Although CJP § 3-224(b) lists several grounds upon which a circuit court must vacate an arbitration award, these grounds do not clash with the common law "manifest disregard" ground. The common-law ground and the statutory grounds can live in harmony—recognizing "manifest disregard" as a valid reason for vacating an arbitration award will not conflict with any of the statutory grounds or render them nugatory. Without clear incompatibility or disharmony between the common law and the statute, conflict preemption does not apply.

This leaves only field preemption. In *Genies*, we held that a statute did not abrogate the common law through field preemption because it did not apply to all potentially affected individuals. 426 Md. at 155–56. There, a defendant argued that a statute penalizing indecent exposure to "authorized personnel" in a prison preempted the entire common-law field of indecent exposure. *Id.* at 156. We held that the statute did not preempt the common-law doctrines relating to indecent exposure because the statute only mentioned "authorized personnel" and did not apply to other potential victims of indecent exposure such as visitors or others who are regularly present at correctional facilities. *Id.* at 159. *Cf. Robinson v. State*, 353 Md. 683, 695–96 (1999) (assault and battery statute abrogated common law by "subsuming and combining" all statutory forms of assault and the common law forms of assault and battery into a single and comprehensive statutory scheme).

The MUAA, although extensive, makes no mention of an intent to preempt the field of arbitration.  Nor has Trio pointed us to any manifestation of any such intention in the legislative history of the MUAA.  Further, the MUAA is not universally applicable.  For example, the MUAA specifically declares that employment contracts with arbitration clauses are exempt from the statute unless the employment agreement specifies that the MUAA shall apply.  *See* CJP § 3-206(b).  As we held in *Prince George's Cty. Educators' Ass'n*, exempt employment agreements are subject to common-law rules and not the MUAA.  309 Md. at 98.  The MUAA's lack of universal applicability necessarily means that the General Assembly did not preempt the entire field of arbitration common law.

The common-law ground of manifest disregard of the law has existed in Maryland for centuries.  The General Assembly did not expressly or impliedly preempt this provision of the common law when it enacted the MUAA.  For these reasons, we hold that an arbitration award subject to the MUAA may be vacated for manifest disregard of the law.  In our next section, we examine that elusive standard.

**Manifest Disregard—The Standard**

This Court applied the "manifest disregard" standard in *Prince George's Cty. Educators' Ass'n*, 309 Md. at 102, 113.  The arbitration in that case arose from a dispute between the Prince George's County Board of Education and the teachers' union.  The Board of Education established a driver's education program, which paid teachers below the rate required by their collective bargaining agreement ("CBA").  *Id.* at 88–90.  The teachers challenged this reduction in pay and argued that their CBA required a higher payment, even for time spent teaching the driver's education program.  *Id.* at 90.  The

14

arbitrator concluded that because the new driver's education program was separate from the Board of Education, the CBA did not compel payment at a higher rate. *Id.* at 90–91.

We assessed the award to determine whether the arbitrator made a "palpable mistake of law or fact . . . apparent on the face of the award . . . ." *Id.* at 105. Importantly though, we recognized the long-held principle that "mere errors of law or fact would not ordinarily furnish grounds for a court to vacate or to refuse enforcement of an arbitration award." *Id.* at 99; *see also Downey*, 428 Md. at 266. Quoting from *Roberts Bros. v. Consumers Can Co.*, 102 Md. 362, 368–69 (1905), we said:

> Whenever the parties to an arbitration have had a full and fair hearing, the award of the arbitrators, will be expounded favorably and every reasonable intendment made in its support . . . . In such cases it is conceded that the Court will not look into the merits of the matter and review the findings of law or fact made by the arbitrators nor substitute its opinion or judgment for theirs, but will require the parties to submit to the judgment of the tribunal of their own selection and abide by the award.

*Prince George's Cty. Educators' Ass'n*, 309 Md. at 99 (cleaned up).

We acknowledged that the arbitrator purported to follow applicable principles of Maryland's successorship doctrine in labor disputes. *Id.* at 110–111. Yet, we required vacatur of the award because the arbitrator "made a palpable mistake of law" by concluding that the Board of Education and the Driver Education School were separate and independent entities. *Id.* at 113. Put another way, the award should have been vacated under the manifest disregard standard because, "the arbitrator . . . made a palpable mistake

15

of law by concluding that the Board and the Driver Education School were separate and independent entities." We vacated the award.[5]

We also applied the manifest disregard standard in *Baltimore Cty. Fraternal Order of Police Lodge No. 4*, 429 Md. at 564. There, we evaluated an arbitrator's conclusion that employees' rights to a minimum healthcare subsidy had vested and remained in place even after the expiration of a labor agreement with the employer. *Id.* at 562–63. Applying Maryland contract law principles, we concluded that the Circuit Court properly denied a petition to vacate the award on manifest disregard grounds. We explained "the arbitrator's findings are awarded a great deal of deference and should not be disturbed unless the arbitrator demonstrates a manifest disregard of the law beyond and different from a mere error in the law or failure on the part of the arbitrator to understand or apply the law." *Id.* at 564 (cleaned up).

The Court of Special Appeals has also recognized that manifest disregard is more than a mere error of law or failure by the arbitrator to understand and apply the law. *See Sharp v. Downey*, 197 Md. App. 123, 151–52 (2010), *vacated by Downey v. Sharp*, 428 Md. 249 (2012) ("'[M]anifest disregard of the law' connotes a palpable mistake of law or fact . . . apparent on the face of the award . . . ." (quoting *Baltimore Teachers Union, Am. Fed. of Teachers, Local 340 v. Mayor & City Council of Balt.*, 108 Md. App. 167, 181

---

[5] In addition, an arbitrator's mistake may be "so gross as to evidence misconduct or fraud . . . ." *Board of Educ. of Prince George's Cty. v. Prince George's Cty. Educators' Ass'n*, 309 Md. 85, 100 (1987). An award "contrary to a clear public policy" also will not be enforced. *Id.* (citing *Amalgamate Transit Union v. Mass Transit Admin.*, 305 Md. 380, 389–90 (1986)).

(1996))); *MCR of Am., Inc. v. Greene*, 148 Md. App. 91, 120 (2002) (same). Federal courts have explained that manifest disregard of the law occurs when: (1) the applicable legal standard is clearly defined and not subject to reasonable debate; and (2) the arbitrator refused to heed that legal principle. *See, e.g.*, *Wachovia Secs., LLC v. Brand*, 671 F.3d 472, 480–81 (4th Cir. 2012); *see also Sanchez v. Elizondo*, 878 F.3d 1216, 1223 (9th Cir. 2018); *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451–52 (2d Cir. 2011); *Hollern v. Wachovia Secs., Inc.*, 458 F.3d 1169, 1176 (10th Cir. 2006); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995).

Although this Court has applied the manifest disregard standard when reviewing an award, we have yet to explain how manifest disregard of the law differs from "mere error." "Manifest" means "[c]lear; obvious; [or] unquestionable." *Black's Law Dictionary* 1106 (10th ed. 2014). In *Prince George's Cty. Educators' Ass'n*, we also explained that, encompassed within the manifest disregard standard, a reviewing court will vacate an award for a "palpable mistake of law or fact." 309 Md. at 105. "Palpable" means "[c]apable of being handled, touched, or felt; tangible[,]" or "[e]asily perceived; obvious." *The American Heritage Dictionary of the English Language* 1267 (4th ed. 2006). Discussing the standard as applied in federal courts, Thomas Oehmke, in his treatise on arbitration, states that, to succeed in a claim that the arbitrator acted in manifest disregard of the law, the party challenging the award must show that the award is "based on reasoning so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling . . . ." 4 Thomas H. Oehmke & Joan M. Brovins, *Oehmke Commercial Arbitration* § 149:2, at 149-4 (3d ed. 2017).

Accordingly, we shall decide whether the Arbitrator made a palpable mistake of law or fact appearing on the face of the award. We look for an error that is readily perceived or obvious; an error that is clear or unquestionable. This can be the only logical interpretation of the standard that was applied, but not fully explained, in *Prince George's Cty. Educators' Ass'n*, 309 Md. at 105.

## The Arbitrator's Award

The Arbitrator issued a detailed opinion in this matter. Concerning whether WSC breached the contract, the Arbitrator looked to the terms of the PSA. The Arbitrator highlighted language in Paragraph 3.E, which states that "[t]he purchase price shall be paid as follows," and then listed several terms and due dates for various payments. Based on these conditions, the Arbitrator concluded that "a reading of the PSA leads [him] to conclude that the parties intended the purchase price of the joint venture interests to be $17 million to be paid in various intervals and upon the occurrence of certain events."

But by selling 6100 Executive Boulevard, the Arbitrator concluded, WSC did not exercise good faith or use commercially reasonable efforts to renew the leases according to terms that would satisfy Paragraph 3.E. In support of this conclusion, the Arbitrator cited *Clancy v. King*, 405 Md. 541, 570–71 (2008), for the proposition that "under the covenant of good faith and fair dealing, a party [must] refrain from doing anything that will have the effect of frustrating the right of the other party to receive the fruits of the contract between them." Applying *Clancy*, the Arbitrator concluded that there was no evidence upon which a fact-finder could determine that WSC operated in good faith, used

commercially reasonable efforts, or made any effort to satisfy the leasing conditions in Paragraph 3.E. The Arbitrator reasoned:

> First, [WSC] offer[s] no facts suggesting that [WSC] made any effort to satisfy the leasing contingency between the time the PSA was executed and the time the building was sold. Second, and most significantly, [WSC]'s own representation that the leasing contingency could not be triggered until 2014 suggests that no effort could have been made to renew leases from the time the PSA was executed in 2005 and the time the building was sold in 2006, because the leases were not even set to expire until 2014.

By failing to exercise good faith or commercially reasonable efforts, WSC breached the PSA.

Finally, the Arbitrator concluded that Trio was not required to prove that the leasing requirements for the second building, 6011 Executive Boulevard, had been met, because WSC's sale of 6100 Executive Boulevard made it impossible to satisfy the leasing requirement in Paragraph 3.E. The Arbitrator ruled:

> [WSC] had control over the condition precedent and they had control over the sale of . . . 6100 Executive Boulevard. [WSC] will not be allowed to use the sale of 6100 Executive Boulevard which prevented the leasing contingency to be satisfied to escape liability for the $3.5 million due to [Trio] as partial payment of the full $17 million purchase price for [Trio's] 58.33% venture interests in WSCJV.

The Arbitrator awarded Trio approximately $3.5 million, the amount that it would have received had WSC fulfilled its obligations according to Paragraph 3.E of the PSA.

WSC contends that the $3.5 million payment described by Paragraph 3.E was required if, but only if, after the expiration of the then-existing government leases, minimum leasing thresholds were achieved for 6100 **and** 6011 Executive Boulevard. For

19

this reason, WSC maintains that the Arbitrator wrongly concluded that the sale of 6100 Executive Boulevard resulted in a breach of the PSA.

*Breach Of Contract*

To prove breach, a plaintiff must simply show that "the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *See, e.g.*, *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). The Arbitrator recognized this principle, emphasizing that Paragraph 3.E of the PSA plainly states that WSC promised to use "commercially reasonable efforts to obtain renewal leases" at 6100 and 6011 Executive Boulevard. This is consistent with Maryland law that contracting parties must exercise good faith in fulfilling their contractual obligations. In *Questar Builders, Inc. v. CB Flooring, LLC*, 410 Md. 241, 273 (2009), we explained that "Maryland contract law generally implies an obligation to act in good faith and deal fairly with the other party or parties to a contract." This implied obligation guides "the manner in which a party may exercise the discretion accorded to it by the terms of the agreement." *Id.*

In *Questar*, we explained that the implied obligation of good faith and fair dealing prevented a party from terminating a contract for any reason or no reason at all when— according to the contract—that party could only terminate the contract for convenience. *Id.* at 276–77. We also concluded that, in addition to the obligation to terminate only for a good reason, the party with termination discretion was required to "act reasonably in ensuring that the [contract] did not become inconvenient, and it certainly was not permitted to create an inconvenience in order to terminate the [contract]." *Id.* at 277.

In *Julian v. Christopher*, 320 Md. 1, 4 (1990), we considered another contract dispute, also involving real property, which required us to determine whether a landlord properly withheld consent to a tenant's subleasing of the property. There we explained that, even when a contract is silent regarding whether a landlord must supply a reason when declining to permit a sublease, the landlord's discretion should be exercised "in good faith, and in accordance with fair dealing . . . ." *Id.* at 9. If the lease does not spell out a standard for the landlord withholding consent to the sublease, then "the implied covenant of good faith and fair dealing should imply a **reasonableness** standard." *Id.* (emphasis added). In that case, the landlord's withholding of consent strictly for the purpose of securing a rent increase was unreasonable particularly where the subtenant would not necessitate additional expenditures from the landlord or increase risk to the landlord. *Id.* at 9–10. Similarly, in *Clancy*, 405 Md. at 570–71, we explained that a contracting party acts in bad faith when doing anything "that will have the effect of injuring or frustrating the right of the other party to receive the fruits of the contract between them."

Applying this precedent, the Arbitrator concluded that WSC did not act in good faith by selling 6100 Executive Boulevard. WSC still had an express obligation to use commercially reasonable efforts to secure re-leasing at 6100 and 6011 Executive Boulevard. The covenant of good faith and fair dealing does not allow WSC to sell these buildings to escape these obligations. Just as the contracting party in *Questar* could not create an inconvenience justifying termination of the contract, WSC has not excused its obligation to use commercially reasonable efforts to re-lease the buildings by selling one of them. *See* 410 Md. at 277. The Arbitrator identified these applicable principles of law

21

and, rather than disregarding these principles, applied them. For this reason, we conclude that the Arbitrator did not manifestly disregard the law when he concluded that WSC breached the PSA by selling 6100 Executive Boulevard. To the contrary, his conclusion is supported by Maryland law.

WSC also argues that the Arbitrator manifestly disregarded the applicable law when he concluded that the sale of 6100 Executive Boulevard necessitated a payment of $3.5 million from WSC to Trio. WSC relies on our decision in *Shoreham Developers, Inc. v. Randolph Hills, Inc.*, 248 Md. 267, 277 (1967), for the proposition that "there can be no breach by nonperformance until the condition precedent is either performed or excused." (quoting *Griffith v. Scheungrab*, 219 Md. 27, 34 (1959)). According to WSC, the prevention doctrine "assumes a 'but for' test: that but for one party's conduct, the other party to the contract would have performed the condition, or it otherwise would have occurred." 13 Richard A. Lord, *Williston on Contracts* § 39:8, at 590 (4th ed. 2013) (citing *Shoreham Developers*, *supra*). In the view of WSC, the Arbitrator then was required to conclude that the sale of 6100 Executive Boulevard was a "but for" cause of the failure of the leasing conditions in Paragraph 3.E. WSC contends that the sale of 6100 Executive Boulevard did not foreclose the possibility that the leasing conditions in Paragraph 3.E would have been satisfied.

The prevention doctrine is an uneasy fit in this case. According to the prevention doctrine, if one party to a contract "hinders, prevents or makes impossible performance by the other party, the latter's failure to perform will be excused." *Williston*, *supra*, at § 39:3, at 569. In other words, the prevention doctrine applies when one party prevents another

22

party from performing under the contract. That is not the situation we have here. Here, the Arbitrator concluded that WSC's sale of 6100 Executive Boulevard prevented **its own** obligation to use commercially reasonable efforts to re-lease the building. WSC cannot use the prevention doctrine to justify its own breach of the PSA. *Glen Alden Corp. v. Duvall*, 240 Md. 405, 425–26 (1964) (unless there is a provision stating otherwise in the contract itself, a party is not excused from performing a contract according to its terms).

Here the Arbitrator identified principles of Maryland law regarding the prevention doctrine. The Arbitrator concluded that WSC breached the PSA by selling the building instead of using commercially reasonable efforts to re-lease it. In doing so, the Arbitrator certainly did not manifestly disregard applicable law when he declined to apply the prevention doctrine.

*Damages*

WSC further argues that the Arbitrator has "punished" WSC by ordering it to pay the fee specified in Paragraph 3.E. When a contract is breached, the damages awarded to the plaintiff:

> should be such as may fairly and reasonably be considered, either as arising naturally, i.e. according to the usual course of things from such breach of the contract itself; or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract, as the probable result of the breach of it.

*Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 162 n.25 (2001) (quoting *Hadley v. Baxendale*, 9 Ex. 341 (1854)). Losses that are speculative, hypothetical, remote, or contingent either in eventuality or amount will not qualify as reasonably certain and therefore are not

23

recoverable as contract damages. *Stuart Kitchens, Inc. v. Stevens*, 248 Md. 71, 74–75 (1967). In an action for breach of contract, courts attempt to put the injured party in as good a position as it would have occupied had the contract been fully performed by the breaching party. *See Beard v. S/E Joint Venture*, 321 Md. 126, 133 (1990) ("Damages for breach of a contract ordinarily are that sum which would place the plaintiff in as good a position as that in which the plaintiff would have been, had the contract been performed.").

Here, the Arbitrator's award does not expressly rely upon these principles of law. But it is reasonably consistent with them. The Arbitrator's award plainly states that WSC could not "escape liability for the $3.5 million due to [Trio] as partial payment of the full $17 million purchase price for [Trio's interests]." By requiring payment as specified in Paragraph 3.E, the Arbitrator attempted to place Trio in as good a position as it would have occupied had WSC fully performed its obligations under the PSA. The award does not "punish" WSC, but is sufficiently consistent with the principles previously recognized by this Court. The award required WSC to compensate Trio for the failure to utilize commercially reasonable efforts to re-lease 6100 Executive Boulevard. *Beard*, 321 Md. at 133. The Arbitrator's decision certainly did not manifestly disregard applicable law.

### Attorney's Fees

In its cross-petition, Trio asserts that the Circuit Court erred when it refused requests for the attorney's fees and costs Trio incurred while defending the Arbitrator's award in Circuit Court. Trio made the request for attorney's fees and costs pursuant to CJP § 3-228(b), which provides, "[a] court may award costs of the petition, the subsequent proceedings, and disbursements." Trio relies on this Court's decision in *Blitz v. Beth Isaac*

24

*Adas Israel Congregation*, 352 Md. 31 (1998), and urges us to conclude that it is entitled, according to CJP § 3-228(b), to an award for the attorney's fees incurred as a result of defending the arbitrator's award. WSC responds by arguing that attorney's fees may be awarded only when a party wrongly refuses to abide by an arbitration award, and that even then, the award of attorney's fees is discretionary, not mandatory.

In *Blitz*, we considered the meaning of CJP § 3-228(b). There, Blitz was victorious in arbitration, yet the losing party, Beth Isaac Adas Israel Congregation, refused to pay any amount of the arbitration award. *Id.* at 33–34. When seeking enforcement of the petition in Circuit Court for Baltimore County, Blitz submitted a statement of costs for "attorney's fees in the amount of $1200.00 and costs and disbursements of $415.00 . . . ." *Id.* at 34. The Circuit Court awarded only $415.00 for "costs and disbursements" but refused Blitz's request for attorney's fees. *Id.*

On appeal, Blitz argued that the terms "costs" and "disbursements" as used in CJP § 3-228(b) include attorney's fees. *Id.* We agreed and said, after a detailed analysis of the history of the statute and the purpose of a fee shifting provision, that "'disbursements' in the context of proceedings to confirm an arbitration award, include attorneys' fees." *Id.* at 44. Blitz filed a motion for clarification. *Id.* at 45. We explained that § 3-228(b) included attorney's fees incurred both at trial and on appeal in confirming and enforcing an arbitration award. *Id.* at 47.

Trio clings to the above quoted sentence from *Blitz*. But that case turned on the meaning of the term "disbursements"—not whether a court should ignore the discretionary language of CJP § 3-228(b) and automatically award attorney's fees to a prevailing party.

25

The Court of Special Appeals has recognized that a circuit court has discretion when awarding attorney's fees under CJP § 3-228(b). *See Goldstein v. 91st St. Joint Venture*, 131 Md. App. 546, 575 (2000) ("We . . . hold that the trial court is entitled to exercise its discretion in deciding whether to award attorneys' fees . . . under [§] 3–228."). Although we have not yet considered whether an award is mandatory or discretionary according to CJP § 3-228(b), we have held, on numerous occasions, that similar statutes are permissive. *See, e.g.*, *Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 682 (1994) *overruled on other grounds by Brooks v. Lewin Realty III, Inc.*, 378 Md. 70 (2003) (Maryland Consumer Protection Act provision for fee shifting, which says "the court may award, reasonable attorney fees" is permissive); *Roland v. Harrison*, 320 Md. 223, 231 (1990) (Maryland's counterclaim rule, which states that parties "may interpose a claim as a counterclaim," by "its plain terms, is permissive and not mandatory"); *cf. Thanos v. State*, 332 Md. 511, 522 (1993) ("When a legislative body commands that something be done, using words such as 'shall' or 'must,' rather than 'may' or 'should' we must assume, absent some evidence to the contrary, that it was serious and that it meant for the thing to be done in the manner it directed."). CJP § 3-228(b) also provides that a court **may** award costs and disbursements. It contains no mandatory language.

Consistent with these interpretations of similar statutes, we conclude that an award of attorney's fees to a prevailing party pursuant to CJP § 3-228(b) is merely discretionary and not required. Here, the Circuit Court's refusal to award attorney's fees was not an abuse of discretion. Unlike the respondent in *Blitz*, who refused to pay any amount of the arbitration award, WSC did not refuse to pay the award. Instead, WSC brought good-faith

26

legal challenges to the Arbitrator's award. Although WSC has lost its attempt to set aside the Arbitrator's decision due to an alleged manifest disregard of applicable law, the Circuit Court did not abuse its discretion in refusing to award attorney's fees.

## CONCLUSION

A party seeking to vacate an arbitration award may do so on the grounds that the award manifestly disregards applicable law. This common-law vacatur ground is well established in Maryland and was not abrogated by the MUAA. Although WSC is correct that manifest disregard of applicable law is a viable means of challenging an arbitration award, the Circuit Court and the Court of Special Appeals correctly concluded that the Arbitrator's award did not demonstrate any such manifest disregard. Finally, a circuit court has discretion to award attorney's fees pursuant to CJP § 3-228(b). In this case, the Circuit Court did not abuse its discretion in declining to award attorney's fees to Trio.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**

27