*Tia Danielle Love v. State of Maryland*, No. 0488, September Term 2022, Opinion by Moylan, J.

**HEADNOTES:**

**A LESSER INCLUDED OFFENSE - THE CASE BEFORE US – THE UNDERLYING NARRATIVE – DISTRICT COURT TO CIRCUIT COURT – THE FIRST CONTENTION –**<u>**HAGANS V. STATE**</u>**: THE CONTROLLING CASELAW – TILTING AT WINDMILLS:** <u>**JOHNSON V. STATE**</u> **– SECT. 3-203: SECOND-DEGREE ASSAULT: AGGRAVATED AND SIMPLE – THE GREATER CHARGE NECESSARILY EMBRACES THE LESSER CHARGE – AN AGGRAVATED BATTERY: "PHYSICAL INJURY" VERSUS "MINOR INJURY" – A SECOND-DEGREE ASSAULT VICTIM: GENERIC OR SPECIAL – THE SECOND CONTENTION: LEGAL SUFFICIENCY OF THE EVIDENCE – STANDARD OF APPELLATE REVIEW: "…IN THE LIGHT MOST FAVORABLE TO THE PROSECUTION" – THE SECOND-DEGREE BATTERY  - A CRIMINAL TRESPASS**

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 0488

September Term, 2022

_____

TIA DANIELLE LOVE

V.

STATE OF MARYLAND

_____

Nazarian,
Reed,
Moylan, Charles E., Jr.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Moylan, J.

_____

Filed:  May 2, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

The primary object for examination on this appeal is the legal phenomenon of a lesser included offense. At the outset, we are confronted by two existential questions. The first is, "What exactly is a lesser included offense?" The second immediately follows, "Does a lesser included offense enjoy a cognizable presence in a trial notwithstanding the fact that it has never been expressly and independently charged?" They are then supplemented by the functional question, "How does a trial judge, preparing to submit a number of issues to the jury for its determination, handle a lesser included offense that has not been expressly and independently charged?"

Our secondary focus will be on the statutory crime of second-degree assault. A conviction for that offense is the substantive back-drop for the particular lesser included offense problem now before us.

### The Case Before Us

The appellant, Tia Danielle Love, was convicted in the Circuit Court for Anne Arundel County by a jury, presided over by Judge Mark W. Crooks, of 1) second-degree assault and 2) trespassing on private property. On the conviction for assault in the second degree, Judge Crooks imposed a sentence of ten years in prison but suspended all but two days. On the conviction for trespassing, he imposed a consecutive sentence of ninety days, but suspended all of it. The combined sentence to be served was thus one of two days hard time. A term of probation for five years was also imposed. On this appeal, the appellant raises the two contentions:

1. **that Judge Crooks erroneously submitted an uncharged offense to the jury; and**

**2. that the evidence was not legally sufficient to sustain the two convictions.**

## The Underlying Narrative

The second-degree assault and the trespassing were both part of an incident that occurred at the Five Below store located at the Arundel Mills Mall on December 21, 2019. Three witnesses testified for the State. The first was Christian Mathis, an employee and effective manager of the store. On December 21, he heard a disturbance and went to investigate. He discovered the appellant screaming and yelling at another customer inside the store. The second individual attempted to "walk away from the situation," but the appellant pursued her, still inside the store. Mr. Mathis directed the appellant to leave the premises. Initially, the appellant stepped out into a hallway but then came back into the store, advancing on Mr. Mathis and attempting to spit on him. He retreated to the rear of the store, entered a stock room, and closed himself inside. He testified, "I'm closing that door and there's pounding and kicking on the door." After a police dispatcher on the telephone advised him that a police officer was on the scene, Mr. Mathis came out of the stock room.

The second witness for the State was Anne Arundel County Police Officer Jonathan Wilson, who was on duty at the Arundel Mills Mall when he responded to the call for service at the Five Below store. Mr. Mathis recounted the incident to Officer Wilson and further explained that he had directed the appellant to leave the store. The appellant had told Mr. Mathis that she was not leaving because she "felt like she didn't do anything wrong." When Officer Wilson then asked the appellant why she did not leave the store, she

responded that she was not leaving because "she was going to wait for the police." Officer Wilson testified that he arrested the appellant after a brief struggle. While he was attempting to transport her to the police station, she tried to get out of the police car. The appellant was transported to another officer's vehicle. She became limp and unresponsive and Officer Wilson summoned an ambulance.

Officer Wilson described the appellant during this exchange, "Her eyes rolled to the back of her head. There was like white foam-ish something coming out of her mouth. She became limp and unresponsive." When the emergency medical team arrived on the scene and prepared to transport the appellant to the hospital, "she became combative, kicking, pulling away." The officer testified that the appellant then kicked one of the EMT personnel. Eventually, she was restrained. Officer Wilson accompanied her to the hospital.

The third and final witness for the State was Ashleigh Shannon-Flemion ("A.F."), who was on duty that day working as a volunteer Emergency Medical Technician for the Odenton, Anne Arundel County, Fire Department. She responded to a call at the Western District Police Station. A.F. started to do an assessment of the appellant. She determined that the appellant may have been "possibly under the influence of alcohol" and determined that she should be transported to the hospital. Once seated on a stretcher, however, the appellant began "kicking and screaming." It was at that point that the appellant kicked A.F. in the thigh. Notwithstanding the kick, A.F. was able to drive to the hospital. She was not seriously injured and did not require any time off from work.

The appellant did not testify and did not present any defense.

**District Court To Circuit Court**

3

The appellant was originally charged in the District Court of Maryland. She requested a trial by jury, however, and her trial was transferred to the Circuit Court, where a jury trial took place on April 27 and 28, 2022. The jury returned verdicts of guilty on two criminal charges: 1) on Count 2, which was assault in the second degree; and 2) on Count 3, which was trespassing on private property.

### The First Contention

Prior to closing argument during a discussion about the charges to be submitted to the jury, the State proposed that the jury should be permitted to consider the lesser included charge of simple second-degree assault charge on A.F. as a possible alternative verdict to guilt on the aggravated version of the same offense. Over strenuous defense objection, Judge Crooks agreed that as a lesser included offense, simple second-degree assault was a permissible verdict and would, therefore, be placed on the Verdict Sheet. The jury, indeed, returned a verdict of guilty on that lesser included offense. The appellant now claims that that verdict was impermissible because it was for an offense that had never been charged. In her appellate brief, the appellant sets out the basis for this first contention:

> In the present case, the charge of <u>assault in the second degree</u> on A.F. <u>was not among the charges lodged</u> against Ms. Love in the Statement of Charges filed <u>in the District Court</u> of Maryland.

(Emphasis supplied.)

Based on that predicate, the appellant further argues in her brief that Judge Crooks was in error in permitting the jury to consider the lesser charge of a simple second-degree assault on A.F. because the lesser charge of second-degree assault had never been expressly charged in the charging document. In brief, she argued:

4

> [T]he charge of assault in the second degree constituted a different crime than the felony version of assault on a law enforcement officer that was included in the charging document…[T]he prosecution should be limited to the wording of the charges in the charging document, they should not be permitted to introduce a new theory of guilt for an offense…[T]he crime of felony assault on a law enforcement officer is different from the charge of assault in the second degree because it protects a distinct category of people, that is, first responders.

(Emphasis supplied.)

From that argument, the appellant concludes that her sentence for simple second-degree assault was an illegal sentence that may be corrected "at any time" pursuant to Maryland Rule of Procedure 4-345(a).

### Hagans v. State: The Controlling Caselaw

With respect to what is a lesser included offense on which a conviction is routinely permissible notwithstanding the fact that it may not have been separately and expressly charged, the recognized Maryland authority, reflecting the common law generally, is without challenge, Hagans v. State, 316 Md. 429, 559 A.2d 792 (1989). The appellant, however, does not mention Hagans or, indeed, the entire body of law that Hagans represents. We are reduced to tilting at windmills.

The magisterial opinion of Judge Eldridge in Hagans v. State is the indisputable Alpha and Omega of lesser-included-offense law in Maryland. In Hagans Judge Eldridge lays out definitively the common law origins of the lesser included offense phenomenon, Maryland's early adoption of that general common law principle, and the universal and unchallenged acceptance of that law throughout the common law world. There can be no cogent discussion of how to handle lesser included offenses in Maryland today without

5

reference to and reliance upon <u>Hagans v. State</u>. The issue in <u>Hagans</u> was precisely the issue

we are now addressing:

> It is <u>whether</u>, as a matter of Maryland common law, <u>a defendant ordinarily can be</u>
> <u>convicted of an offense which is not charged but which is a lesser included offense</u>
> <u>of one that is charged</u>.

316 Md. at 433. (Emphasis supplied.) That is, <u>ipso facto</u>, the appellant's first contention.

Hagans had been charged with an attempt to commit common law burglary. He was

not expressly charged with attempted breaking and entering the dwelling house of another,

the precise crime of which he was ultimately convicted:

> <u>Hagans was charged</u> in the Circuit Court for Montgomery County <u>with attempt to</u>
> <u>commit common law burglary</u> and nine other offenses all based on the incident
> described above. <u>He was not</u>, however, <u>expressly charged with attempted breaking</u>
> <u>and entering a dwelling house of another</u> in violation of Maryland Code (1957, 1987
> Repl. Vol.), Art. 27, §31A. Hagans elected a jury trial.
>
> <u>At the trial</u>, after the presentation of evidence by both sides, and during argument
> on the defendant's motions for judgment of acquittal, <u>the trial judge indicated that</u>
> <u>he intended to submit to the jury, as a lesser included offense of burglary, the offense</u>
> <u>of attempted breaking and entering a dwelling house of another</u>. <u>Defense counsel</u>
> <u>objected</u> to the submission of the attempted breaking and entering offense to the
> jury, but the prosecuting attorney argued in favor of the submission. Thereafter, <u>the</u>
> <u>trial judge instructed the jury on attempted breaking and entering the dwelling house</u>
> <u>of another</u>.
>
> All but two of the numerous charges against the defendant Hagans were disposed
> of by nolle prosequis, by the grant of motions for judgments of acquittal, and by
> jury acquittal. <u>Hagans was convicted by the jury of attempted breaking and entering</u>
> <u>a dwelling house of another</u> and carrying a concealed weapon. He was sentenced to
> three years imprisonment on the former conviction and two years imprisonment, to
> be served consecutively, on the latter. The Court of Special Appeals affirmed in an
> unreported opinion.

316 Md. at 434. (Emphasis supplied.) The issue there was precisely that which is the issue

here:

6

> Hagans concedes that attempted breaking and entering a dwelling house of another is a lesser included offense of attempted common law burglary. The defendant presents a single question for our review, stating: The issue in this case is whether or not a defendant who is charged with one offense can be convicted of a lesser included offense which is not contained in the charging document.

316 Md. at 435. (Emphasis supplied.) Over the decades, Maryland had been creeping up on what has become the settled law:

> On several occasions in recent times this Court has noted that it has not actually decided whether a defendant, charged with a greater offense, can be convicted of a lesser included offense which was not specifically charged. Nonetheless, while not actually deciding this question, two of our earlier decisions were premised upon the clear understanding that one charged with a greater offense could be convicted of an uncharged lesser included offense.

316 Md. at 444-45. (Internal citations omitted.) (Emphasis supplied.)

Every jurisdiction that had considered the law with respect to lesser included offenses had reached the same conclusion:

> With the disappearance of the common law procedural distinctions between felonies and misdemeanors, courts no longer adhere to the original common law limitation upon the rule permitting convictions on lesser included offenses. The principle that a defendant, charged with a greater offense, can be convicted of an uncharged lesser included offense, has been adopted by virtually every jurisdiction in the United States which has passed upon the issue.

316 Md. at 447. (Internal citations omitted.) (Emphasis supplied.) Maryland unequivocally followed suit:

> Since the rule permitting a conviction on an uncharged lesser included offense was well-established at common law, is accepted throughout the United States today, and generally promotes a just result in criminal cases, we shall adhere to it.

316 Md. at 448. (Emphasis supplied.)

7

The societal value of being able to rely at times on the lesser included offense was well explained by Hagans at 316 Md. 448:

> The doctrine is a valuable tool for defendant, prosecutor, and society. From a defendant's point of view, it provides the jury with an alternative to a guilty verdict on a greater offense. From the prosecutor's viewpoint, a defendant may not go free if the evidence fails to prove an element essential to a finding of guilt on the greater offense. Society may receive a benefit because, in the latter situation, courts may release fewer defendants acquitted of the greater offense. In addition, the punishment society inflicts on a criminal may conform more accurately to the crime actually committed if a verdict on a lesser included offense is permissible.

(Emphasis supplied.)

Our quandary, of course, is that the appellant does not present an argument based on Hagans v. State nor on the entire body of universally accepted law that Hagans represents. We are, indeed, reduced to battling shadows.

## Tilting At Windmills: Johnson v. State

The darkest of those shadows is Johnson v. State, 427 Md. 356, 47 A.3d 1002 (2012). The appellant proffers Johnson as a case of controlling authority. The core of her argument is exclusively Johnson:

> The ruling and reasoning of the Court of Appeals in *Johnson v. State* supports the conclusion that Ms. Love's conviction and sentence in Count 2 must be vacated. In *Johnson v. State*, 427 Md. at 373, the defendant argued in a motion to correct illegal sentence that the trial court erred by rendering a verdict and by sentencing him for the crime of assault with intent to murder, a crime not charged in the indictment filed against him. The Court of Appeals ruled that a conviction on a charge not contained in the indictment is not permitted. *Id.* at 375. The illegality of the conviction itself required that the conviction be vacated. *Id.* at 378.

(Emphasis supplied.)

In the Johnson case, the charge on which the defendant had been convicted and for which the defendant was sentenced was assault with intent to murder. It was undisputed

8

that the defendant had never been charged with assault with intent to murder, either explicitly or implicitly. The Johnson decision, 427 Md. at 380, concluded:

> Petitioner was not charged with assault with intent to murder, nor was the indictment properly amended to include that charge.

(Emphasis supplied.)

The entire issue of whether one crime was or was not a lesser included offense subsumed within a greater inclusive offense, however, never arose in the Johnson case. The State never proffered such a legal argument and the Johnson opinion itself had no occasion even to mention the subject, except expressly to disavow any consideration of it. The opinion twice expressly pointed out that it was not considering such a subject in any way, shape, or form. At the very outset of her opinion, Judge Adkins pointed out that the very question on which *certiorari* had been granted exempted the issue of a lesser included offense from being considered by the Court:

> Did the trial court have jurisdiction to convict Petitioner of a crime that was not contained in the indictment and was not a lesser included offense of any charge contained in the indictment?

427 Md. at 361. (Emphasis supplied.)

At one other point in the opinion, 427 Md. at 376 n.12, it was further expressly stated that the entire subject of lesser included offenses was not applicable to what was being considered in the Johnson opinion:

> An exception to this rule, not applicable here, exists for lesser included offenses of crimes charged in the indictment. *See Hagans v. State,* 316 Md. 429, 450, 559 A.2d 792, 802 (1989); Charles E. Torcia, *Wharton's Criminal Procedure* (13th ed. 1990), § 267.

(Emphasis supplied.) "Not applicable here."

9

Johnson v. State thus expressly disavowed any consideration of the subject. The Johnson case simply did not involve any consideration by the jury of an uncharged lesser included offense. Proffered as an ostensible giant blocking the appellant's conviction, Johnson v. State turned out to be a windmill. Under those circumstances, it is a proverbial case of carrying coals to Newcastle to conclude that we find Johnson v. State to be rhetorically non-persuasive precisely because we find it to be fundamentally non-pertinent. The entire first contention goes nowhere, not even to Newcastle.

## Sect. 3-203:
## Second-Degree Assault: Aggravated And Simple

To get a firm grip on any concept, it is wise initially to stand far back and to envision the big picture. It is only then that one should narrow the focus progressively as one closes in on details that may best be seen under a microscope. First see where the subject fits in the larger strategic world. Then examine exactly what the subject is in tactical detail.

The crime of assault is as ancient as the common law itself. Assault was first transported to Maryland in 1634 as part of the unseen cargo of the Ark and the Dove as English colonists brought with them their English legal system. As a common law misdemeanor, assault flourished on these shores for the next three and one-half centuries. For a full appreciation of the rich and diverse development of assault first in the proprietary colony and then in the State over the course of those centuries, *see* Lamb v. State, 93 Md. App. 422, 613 A.2d 402 (1992), cert. denied, 617 A.2d 1055 (1993). Assault was only reduced to a statutory format as of October 1, 1996. Acts of 1996, ch. 632. Robinson v. State, 353 Md. 683, 728 A.2d 698 (1999).

In the Criminal Law Article of the Maryland Code, Title 3 concerns "Other Crimes Against The Person." Subtitle 2 of Title 3 then narrows that focus down to "Assault, Reckless Endangerment, and Related Crimes." Three sections then cover "Assault."

Sect. 3-201 deals with "Definitions" and primarily provides, in Sect. 3-201(b), that:

> "Assault" means the crime of assault, battery, and assault and battery, which retain their judicially determined meanings.

For the first time, a distinction is then made between assault in the first degree and assault in the second degree, as Sect. 3-202 goes on to prohibit "Assault in the first degree," a felony carrying a maximum penalty of 25 years' imprisonment. We are not here concerned with either Sect. 3-201 or Sect. 3-202.

It is Sect. 3-203, "Assault in the second degree," that concerns us in the present case. Subsection (a) prohibits the crime in its most basic and simple form:

> (a) A person may not commit an assault.

Subsection (b) goes on to provide the penalty for a simple second-degree assault:

> (b) Except as provided in subsection (c) of this section, <u>a person who violates subsection (a)</u> of this section <u>is guilty of the misdemeanor of assault in the second degree</u> and on conviction is subject to imprisonment not exceeding 10 years or a fine not exceeding $2,500 or both.

(Emphasis supplied.)

Subsection 3-203(a), second-degree assault in its simple form, embraces all of the criminal behavior that at the common law would have constituted the crime of assault, of battery, and of assault and battery. *See* <u>Lamb v. State</u>, 93 Md. App. 422, 613 A.2d 402 (1992), <u>cert. denied</u>, 329 Md. 110, 617 A.2d 1055 (1993). As the crime of assault has proliferated over the years, the fact that we are suddenly dealing with assault in the second-

11

degree (Section 3-203) rather than assault in the first-degree (Section 3-202) tells us only part of the now more nuanced proliferation story. Second-degree assault itself now further sub-proliferates into a simple misdemeanor form and an aggravated felony form.

It is Sect. 3-203(c) that bisects a second-degree assault in Maryland into two different levels of severity – a simple level and an aggravated level. Whereas Subsection (a) spells out the simple or less severe level of the offense, Subsection (c) lays out an aggravated or more severe level of the offense. There are two required elements for such aggravation. The first aggravating factor is that the assault must have caused some "physical injury," described by Subsection (c) as "any impairment of physical condition excluding minor injuries." The second aggravating element is that the "physical injury" shall have been inflicted on "another if the [defendant] knows or has reason to know that the other" is a member of any of three protected classes. Subsection (c)(2) spells out what those classes of specially protected victims are:

> (i) a law enforcement officer engaged in the performance of the officer's official duties;
>
> (ii) a parole or probation agent engaged in the performance of the agent's official duties; or
>
> (iii) a firefighter, <u>an emergency medical technician</u>, a rescue squad member, or any other first responder engaged in providing emergency medical care or rescue services.

(Emphasis supplied.)

There are thus two extra elements, both of which are necessary to raise a simple second degree assault to an aggravated second-degree assault, to raise a Subsection 3-203(a) violation to a Subsection 3-203(c) violation. The first is that the assault must have

12

inflicted some "physical injury." The second is that the assault must have been inflicted on some member of one of three protected categories of victims. Subsection (c) is thus a greater inclusive offense. Subsection (a) remains its lesser included offense. Subsection (c), moreover, necessarily includes Subsection (a). Should the State fail to prove that some "physical injury" occurred, an aggravated second-degree assault would drop back to a simple second-degree assault. Should the State fail to prove that the generic A.F. was specifically an Emergency Medical Technician, then an aggravated second-degree assault would drop back to a simple second-degree assault.

The simple second-degree assault is contained within the aggravated second-degree assault. The lesser is, by definition, contained within the greater. The present case fits squarely with the Hagans requirement that "[a]ll of the elements of the lesser included offense must be included in the greater offense" such that "it must be impossible to commit the greater without also having committed the lesser." 316 Md. at 449.

If the aggravated level of second-degree assault is established, the status of the second-degree assault is elevated from a misdemeanor to a felony. The maximum fine, moreover, is raised from one "not exceeding $2,500" to one "not exceeding $5,000." Subsection (c)(3) provides:

> A person who violates paragraph (2) of this subsection is guilty of the felony of assault in the second degree and on conviction is subject to imprisonment not exceeding 10 years or a fine not exceeding $5,000 or both.

(Emphasis supplied.) The term of possible imprisonment remains the same.

This division of a second-degree assault into a simple level and a more aggravated level is a quintessential example of what Hagans v. State described at 316 Md. 443:

> [W]here an offense is divided into a more serious degree and a less serious degree, based upon the presence or absence of a specific valuation or some other particular element, the division creates a greater and a lesser included offense.

(Emphasis supplied.) Simple second-degree assault pursuant to Sect. 3-203(a) is thus a textbook example of a lesser included offence. Both the greater inclusive (aggravated) version and the lesser included (simple) version of second-degree assault, moreover, fit snugly within the modest contours of Sect. 3-203. By way of illustrating the concept, Sect. 3-203 is a pat hand.

## The Greater Charge Necessarily Embraces The Lesser Charge

The appellant nonetheless asserts that second-degree assault was never charged. In a more nuanced sense, of course, it definitely was charged. It was charged implicitly. In the course of the charge for the aggravated felony of second-degree assault against an EMT pursuant to Sect. 3-203(c), every constituent element of simple second-degree assault pursuant to Sect. 3-203(a) would necessarily have been expressly charged as well. There is not a single element of simple second-degree assault that is not also an indispensable element of aggravated second-degree assault. With respect to any actual element of simple second-degree assault, it necessarily had been charged and could, therefore, have come as no surprise as an element. The appellant is, in effect, arguing that Subsection 3-203(a) is not a lesser included offense as a part of Subsection 3-203(c). The statute itself, however, flatly provides otherwise. This is the very nature of being a lesser included offense. It is what "lesser included" means.

## An Aggravated Battery:
## "Physical Injury" Versus "Minor Injury"

14

It is here – with the aggravating criterion of whether a battery has inflicted a "physical injury" as opposed to a "minor injury" – that a critical boundary line separates the felony from the misdemeanor. In close cases, such an assessment can self-evidently be a very subjective call. It is a criterion that essentially defies any attempt at mathematical certainty. On just such a subjective call, however, the verdict can readily fluctuate upward to an aggravated assault or downward to a simple assault on little more than a factfinding whim. The greater inclusive offense (the aggravated version of second-degree assault) will always have been the form of the crime expressly alleged in the charging document. Because the fluctuation upward or downward is then so relatively easy and unpredictable, it is doubly important that the implicit presence of the lesser included offense be readily understood and available in such a circumstance.

## A Second-Degree Assault Victim: Generic Or Special

There is also a second such boundary line. The appellant argues that A.F., as the assault victim of the lesser included offense, made a sudden and unanticipated appearance in the trial as the assault victim without her status as that assault victim ever having been formally charged. Such, of course, is simply not the case. Despite the protestations of the appellant to the contrary, the presence of A.F. in the charge as the second-degree assault victim was always a constant element. The appellant, indeed, acknowledges in her brief that "the felony version of assault on a law enforcement officer was included in the charging document." That was the second-degree assault on A.F. as an Emergency Medical Technician, pursuant to Subsection 3-203(c). The appellant also flatly acknowledges that,

15

"Assault on a law enforcement officer, including an E.M.T., was one of the original charges."

A.F.'s very existence as "another person" was, of course, a necessary and generic element of simple and aggravated second-degree assault alike. A.F.'s special status as an "Emergency Medical Technician" was the aggravating element. In either capacity, however, A.F. was always there as the second-degree assault victim regardless of whether the assault was in its simple form or in its aggravated form. A.F. did not lose her capacity as a generic assault victim. Even as a non-E.M.T., she enjoyed the generic right not to be kicked. We hold that the conviction in this case of the appellant for the lesser included offense of simple second-degree assault was perfectly proper.

## The Second Contention:
## Legal Sufficiency Of The Evidence

As the defense theory about an erroneous conviction for an uncharged lesser included offense has discernably flatlined, our attention shifts to the appellant's attack on the legal sufficiency of the State's evidence. This second contention will not detain us long. The appellant contends that she was legally entitled to a verdict of acquittal at the end of the case because the evidence was not legally sufficient to support either her conviction for a second-degree assault or her conviction for trespassing. The contention is without merit.

## Standard Of Appellate Review:
## "…In The Light Most Favorable To The Prosecution"

The appellant has set out very carefully and correctly the controlling standard of appellate review to be employed when assessing the legal sufficiency of the State's evidence to support convictions. The State fully agrees with the statement of that standard,

as do we. Maryland has regularly defined that standard in the words of the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), as it asks, "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Taylor v. State, 346 Md. 452, 457, 697 A.2d 462 (1997). (Emphasis supplied.)

In the application of that standard to any given factual issue or legal argument, the appellant quite correctly reminds us, "This Court on appeal will view the evidence in the light most favorable to the prosecution." Moye v. State, 369 Md. 2, 12, 796 A.2d 821 (2002). (Emphasis supplied.)

We will now apply that controlling standard of appellate review to the specific legal sufficiency arguments before us. As we do so, we remind ourselves that the articulation of that standard of appellate review is not some ritualistic paying of lip service to the standard at the beginning of an appellate opinion or the beginning of an appellate argument that may thereafter be conveniently ignored. It is not ritualistic. It is not a mere opening exercise. It is the articulation of the controlling standard that must be precisely remembered and must be rigorously adhered to at every stage of the review that follows.

**The Second-Degree Battery**

All parties agree that the assault in this case consisted of the battery allegedly committed when the appellant kicked A.F. in the thigh. The appellant's entire attack on the legal sufficiency of the State's case focuses on the State's proof of the appellant's mens rea at the moment she kicked A.F., either a specific intent to kick A.F. or a general intent

to kick and flail about in what could have been deemed to be a reckless manner. The appellant's entire argument consists of seven lines:

> In the present case, <u>the defense theory was that Ms. Love was going in and out of consciousness</u> while she was being forced onto a stretcher and into the ambulance. <u>Her actions were neither intentional nor reckless</u>. The evidence leaves no doubt that Ms. Love was suffering from a medical emergency. <u>If her actions were involuntary, then the court below erred</u> by denying defense counsel's motion for judgment of acquittal and by submitting the charge of assault in the second degree on A.F. to the jury.

(Emphasis supplied.) Those seven lines, moreover, actually reduce themselves to a spare five dispositive words:

> <u>If her actions were involuntary</u>…

(Emphasis supplied.)

Ironically, the appellant never uses the indicative mood to assert or in any way to claim that the kicking was actually involuntary. She resorts exclusively to the subjunctive mood to speculate hypothetically that the kicking might have been involuntary and then to consider the legal significance in just such a hypothetical case.[1] In effect, she hypothesizes a winning scenario.

---

[1]    Even if this Court were engaged in factfinding (it is not), we could not agree with the defense's factual conclusions. The appellant offers "the defense theory…that [the appellant] was going in and out of consciousness while she was being forced onto a stretcher and into the ambulance." It cites no direct evidence, however, about the appellant actually being at times unconscious. The appellant further alleges that she "was suffering from a medical emergency" but again cites no direct evidence for that diagnosis. The entire "defense theory" is hypothetical and subjunctive.

The State, by contrast, cites the direct and competent testimony of A.F. that the appellant was conscious of what she was doing when she kicked A.F. in the thigh. A.F. described the appellant as being combative after the EMTs placed her on the stretcher, "She started kicking and screaming saying that she wanted to get out." Unconscious people do

18

Let us accept for the moment, purely arguendo, the factual establishment of the defense theory that at the critical time of the kicking, the appellant "was going **in and out of consciousness**." (Emphasis supplied.) That is the most favorable condition for her that the appellant proffers. It would present us with two versions of the evidence – the "in" consciousness version and the "out" of consciousness version. The choice of versions would self-evidently have a dispositive impact on the appellant's mens rea. When conscious, the appellant would be capable of forming at least a general intent to kick and to flail about and even perhaps of forming a specific intent to kick A.F. Pursuant to either such intent, the State would prevail. When unconscious, by contrast, an involuntary muscular spasm by an unconscious defendant would not establish the necessary mens rea, either by way of a specific intent or by way of a general intent. The defendant would prevail.

---

not talk. A.F. testified that the appellant straddled the stretcher and kicked her, "She pushed her leg out and kicked me in my thigh area."

On any issue as to the appellant's consciousness and state of mind, the State's evidence strikes us as superior to the appellant's unsupported opinions and "defense theories," but all of this is, of course, beside the point. We are not engaged in factfinding and the relative strengths of the two versions of the evidence are not before us for resolution. That is purely a jury function. As State v. Albrecht, 336 Md. 475, 478, 649 A.2d 336 (1994), admonished us:

> It is not the function or duty of the appellate court to undertake a review of the record that would amount to in essence a retrial of the case.

(Emphasis supplied.)

We shall, therefore, forbear engaging in any assessment of the facts for that is not our function. An evidentiary battle, moreover, is better waged in the indicative mood than in the subjunctive mood.

"In and out of consciousness" presents two binary possibilities. There is thus one version of the evidence more favorable to the appellant and another version of the evidence more favorable to the State. That might be a tough call for a factfinder, but it is a "slam dunk" for the appellate review of legal sufficiency. Faced with such a diametric dichotomy of versions, we must look to the controlling standard of appellate review. Under it, of course, we are enjoined to accept that version of the evidence "**most favorable to the prosecution**." (Emphasis supplied.) That version of the evidence pursuant to which the prosecution wins is self-evidently more favorable to the prosecution than that version of the evidence pursuant to which the prosecution loses. "In and out" becomes "In." Accepting that version of the evidence, as we must, the appellant at the moment of the kicking was conscious, the act of kicking was voluntary, and the State prevails. The controlling standard of the appellate review permits no less. Q.E.D.

### A Criminal Trespass

The appellant's challenge to the legal sufficiency of the evidence to support her conviction for trespassing is more straightforward. Criminal Law Article, Sect. 6-403(b) provides:

> (b) <u>A person may not remain on private property</u> or board the boat or other marine vessel of another, <u>after having been notified</u> by the owner or the owner's agent <u>not to do so</u>.

(Emphasis supplied.)

It is not contested that the Five Below store was private property and that Christian Matthews was the manager thereof. Mr. Matthews ordered the appellant to leave the store. She walked out into the hallway but immediately returned. Her demeanor was decidedly

hostile. She attempted to spit on Mr. Matthews and he retreated to the back of the store and sought shelter from her in a stockroom. He only came out when he heard by telephone that a police officer had arrived.

Confronted by the police officer, the appellant acknowledged that she had disobeyed Mr. Matthew's order to leave the store. She reasserted her resolve to stay in the store until the police arrived. That, however, was not her call to make. There is no more that need be said. The appellant does not contest that she refused to leave the store when ordered to leave by the store's manager. Her reason for doing so is irrelevant. In brief, her entire argument is:

> The testimony of Officer Wilson made clear that <u>the reason Ms. Love did not leave the store the second time was that she intended to wait for the police officer to arrive</u>. Thus, <u>her intent was not criminal, it was innocent</u>, consistent with her wish to meet with the police officer.

(Emphasis supplied.)

The appellant baldly asserts that "the reason [she] did not leave the store <u>the second time</u>" was "not criminal, it was innocent." (Emphasis supplied.) That argument generates the obvious follow-up question, "But what about the first time? What about the re-entry?"

When the appellant was first ordered to leave the store, she initially did so but then immediately reentered. She did so for the apparent purpose of attacking the store manager, spitting at him and forcing him to retreat to a stock room for his safety. Was this not a version of the evidence that the jury was entitled to believe? Is it not the version of the evidence that this Court is enjoined to accept?

21

Even if, however, we were, purely <u>arguendo</u>, to limit our review to the second time the appellant was ordered to leave the store but refused to do so, what would be the controlling law? The appellant asserts that on that second occasion, "her intent was not criminal [but] was innocent." Is criminal trespassing a crime like common law burglary that requires not only an entering into the prohibited premises but also an intent to commit a crime therein? The statute makes no mention of any such additional element. Might the argument not be made, moreover, that the decision not to leave after having been ordered to leave is a criminal intent in its own right? An intent to commit a criminal trespass?

The appellant seems to proffer "waiting for the police" as an exemption from the requirement to leave the premise of another after being ordered to do so. She offers no law, however, recognizing such an exemption. <u>Stare decisis</u> demands more than an <u>ipse dixit</u>. She makes no mention generally of exemptions from an order to leave. What about rain? Snow? A heavy fog? Extreme heat? Extreme cold? An icy sidewalk? Exemptions might take another form. How about heavy traffic? A high wind? An angry mob? An overly inquisitive press corps? A stalker? What about a recalcitrant trespasser who, instead of leaving, chooses to wait for a taxicab? To wait for the arrival of one's lawyer? To wait for the arrival of one's friend? To wait for an apology?

At the most fundamental level, it cannot be (and it is not) the prerogative of the trespasser to determine which trespasses, if any, are legally permissible. The evidence in this case was clearly sufficient to permit the jury to find that the appellant was guilty of criminally refusing to leave the property of another after having been ordered to do so.

Such a finding was not compelled but it was permitted. That is all, of course, that legal sufficiency requires.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**